CITY NATIONAL BANK OF LINCOLN, APPELLEE, V. LLOYD
DENSLOW ET AL., APPELLANTS.

FILED MAY 25, 1926. No. 24136.

1. Bills and Notes: RENEWALS. The taking of a new note is a
renewal of the old indebtedness and not a payment thereof,
unless there is a specific agreement between the parties for the
extinguishment of the original debt.

2. ————: CONTRACT FOR REPURCHASE: RENEWALS. Contract by
one bank and its officers to repurchase from another bank and
pay for notes discounted by the latter set out in opinion and
*held* not to include renewals of notes already discounted.

3. Guaranty. Ordinarily a guaranty has a prospective operation
and is not applicable to past transactions unless so stated.

4. Evidence. Extrinsic proof of a custom is not available for the
purpose of changing obligations expressed in the plain language
of a written instrument.

5. Guaranty: CONSTRUCTION. If an obligee in a guaranty draws
it in a form requiring an explanation, guarantor is a favorite
of the law in the interpretation of ambiguous provisions.

APPEAL from the district court for Scotts Bluff county:
P. J. BARRON, JUDGE. *Reversed.*

*Morrow & Morrow,* for appellants.

*A. R. Honnold* and *Stewart, Perry, Stewart* and *Van Pelt,*
contra.

Heard before MORRISSEY, C. J., ROSE, DAY, THOMPSON,
and EBERLY, JJ., and REDICK, District Judge.

ROSE, J.

This is an action by the City National Bank of Lincoln,
plaintiff, to recover from Lloyd Denslow, Oscar W. Gard-
ner and Carl A. Henatsch, defendants, unpaid debts and
accrued interest evidenced by 27 promissory notes aggregat-
ing $76,539.02. It is alleged in the petition that plaintiff
from time to time purchased the notes from Denslow, who
indorsed them, and from the State Bank of Gering, a bank-
ing corporation in which the defendants were stockholders
and financially interested, and that in consideration of such

purchases defendants guaranteed payment of the notes at maturity, obligating themselves to plaintiff in an accepted writing as follows:

"To The City National Bank,

"Lincoln, Nebraska.

"We, the undersigned, being stockholders and financially interested in the State Bank of Gering, of Gering, Nebraska, and being associated with Lloyd Denslow as stockholder in said State Bank of Gering, and being desirous that you shall, from time to time, purchase notes, loans and commercial paper from said State Bank of Gering, and said Lloyd Denslow, such notes, loans and commercial paper to be indorsed or guaranteed by said Lloyd Denslow.

"Therefore, if you shall from time to time, and at any time after date hereof, purchase from said State Bank of Gering, or from said Lloyd Denslow, any notes, loans or commercial paper, and if such notes, or any of them, and such commercial paper, or any part thereof, shall not be paid at maturity, together with interest accrued thereon, in accordance with the terms thereof, the undersigned jointly and severally agree, and hereby bind themselves, to purchase such matured note and commercial paper, or any notes or any part of such commercial paper as you may elect, or demand, from you, paying therefore the amount due thereon, together with interest; and in case we should fail to purchase any of such notes or commercial paper from you in accordance with the provisions hereof, after demand made upon us, you are hereby especially authorized to recove from us the amount due upon any such notes, or any of them, and upon any such commercial paper, or any part thereof, in any court of competent jurisdiction: Provided, however, that this agreement shall be in full force and effect for the period of one (1) year from date hereof; and provided further that the amount of the notes and commercial paper to be purchased by said State Bank of Gering, for which the undersigned shall be responsible, shall at no time exceed the sum of one hundred thousand ($100,000) dollars, in the aggregate, but this guaranty shall at all times cover

any such paper or notes purchased by you up to and including the sum of one hundred thousand ($100,000) dollars.

"It is especially agreed that this agreement of guaranty shall apply to all notes or commercial paper purchased by you within one (1) year from this date, without regard to whether such notes or commercial paper shall mature within one (1) year from the date thereof.

"Witness our hands, this 1st day of October, 1921.

> "Lloyd  Denslow.
> "C.  W.  Gardner.
> "C.  A.  Henatsch."

The petition contains a copy of this instrument and a list of the unpaid notes alleged to have been purchased within a year by plaintiff from the State Bank of Gering and Denslow, showing in each instance the date, the name of the maker, the principal, the interest and the amount due. In addition plaintiff pleaded a demand, nonpayment, failure of defendants to comply with their guaranty and prayed for a judgment in the sum of $76,539.02.

Defendants in their answer admitted the execution of the instrument on which the action is based and that plaintiff purchased notes of the State Bank of Gering and Denslow prior to the date of the contract, October 1, 1921, but alleged, among other things, in addition to a general denial of unadmitted allegations, that the notes listed in the petition were renewals of notes purchased by plaintiff prior to that date.

Upon a trial of the issues the district court directed a verdict in favor of plaintiff for $57,300 and from a judgment therefor defendants appealed.

The controlling question presented by the appeal is whether the notes listed in the petition are notes which defendants obligated themselves to repurchase from plaintiff. The notes defendants agreed to purchase were those which plaintiff bought after the date of the contract, October 1, 1921. With few exceptions the notes in suit were renewals of notes purchased by plaintiff prior to that date. Were the renewals notes which defendant agreed to repurchase?

The original debts represented by the notes generally were incurred by the makers before the contract was executed. There is no evidence of an agreement between the makers and the holders of the notes that the renewals should pay or discharge the original indebtedness.   The law is that the taking of a new note is a renewal of the old indebtedness and not a payment thereof, unless there is a specific agreement between the parties for the extinguishment of the original debt. *Exeter Nat. Bank v. Orchard,* 39 Neb. 485; *Davis v. Thomas,* 66 Neb. 26; *Auld v. Walker,* 107 Neb. 676; *Berwyn State Bank v. Swanson,* 111 Neb. 141; *Nebraska State Bank v. Walker,* 111 Neb. 203; *Farmers State Bank v. Dowler,* 112 Neb. 262; *Exchange Nat. Bank v. Schultz,* 113 Neb. 346.

The transactions relating to the transfer of notes were conducted between the two banks. For a considerable time before the contract under consideration was executed the State Bank of Gering had a checking account at plaintiff's bank in Lincoln.   It was the custom of the former to send to plaintiff from time to time for rediscount notes held by the State Bank of Gering and Denslow, its officer.   The proceeds were credited to its account. The rediscounted notes bore the personal indorsement of Denslow.   When a note matured a copy was sent to him or his bank and paid or replaced by a renewal note or other paper.   Gardner, a stockholder, never indorsed personally any of the notes, but just prior to October 1, 1921, he increased his interest in the State Bank of Gering by purchasing additional stock.   Plaintiff then held rediscounted notes aggregating a large sum, and drew up and procured the instrument bearing the signature of Gardner, who joined Denslow and Henatsch as obligors. The contract on its face applies to transactions subsequent to its date. In absence of evidence of an evil design, and there is none, the instrument, with its references to future business, should not be regarded as a mere device to trick Gardner into guaranteeing payment of past obligations which Denslow and the bank managed by him had already assumed by indorsements.   Notes already rediscounted were not contem-

plated. The indebtedness for which a rediscounted note was given was incurred by the maker before the contract under consideration was executed. The new note was a renewal of the original indebtedness and not a payment of it. If for any reason plaintiff should be unable to prove the liability of the maker on a rediscounted note, the remedy by proof of the original indebtedness, of ownership and of nonpayment would still remain. This is not a suit against the State Bank of Gering and Denslow on their indorsements, but an action on the contract to purchase and pay for rediscounted notes. It operates alike on the obligors. Gardner assumed no liability except the future obligations imposed by this contract and this does not include the repurchase and payment of unpaid notes in effect already rediscounted.

Plaintiff did not rely wholly on the contract and proof of the rediscounted notes listed in the petition, but adduced evidence for the purpose of showing how the parties understood their agreement and what was done under it. Plaintiff resorted to correspondence between Denslow and officers of plaintiff, implying knowledge of a liability of defendants for payment of notes in controversy; to oral testimony that plaintiff, after execution of the contract, would not have rediscounted the notes except for the guaranty of defendants; to verbal statements of a custom that the amount due on a note, when matured, was credited by plaintiff to the account of the State Bank of Gering and returned for payment and paid or replaced by other paper; and to other proof of a similar import. Proofs of this nature came largely from Denslow and officers of the plaintiff. Denslow was liable as indorser on all the paper in controversy. He was exposed to a temptation to divide his burdens with Gardner, who had never become an indorser. The officers of plaintiff were interested in an interpretation which would make Gardner liable for debts incurred before he bound himself by future transactions. Entries on the bank books of plaintiff did not change the import of the contract, unambiguous as it is in relation to future

transactions, or cast on Gardner and the other obligors a burden not within the terms of their written obligations. Considered a specific guaranty, as viewed by plaintiff, it has a prospective operation, since that is plainly indicated by its terms. Custom is not available for the purpose of changing the import of what is written in plain language. The contract, in imposing obligations, contemplates transactions in their true light and not retroactive fictions. The instrument was drawn by plaintiff. If it needed extrinsic explanation as to being retroactive, defendants are the favorites of the law.

A careful examination of the entire record fails to disclose anything substantial to show that Gardner waived or otherwise lost his right to stand on the terms of his agreement as written. The conclusion is, therefore, that plaintiff did not make a case against defendants for the repurchase of the renewal notes. It follows that the judgment below is reversed and the cause remanded for further proceedings.

REVERSED.