264 N.W.2d 854 (1978)
200 Neb. 635
METROPOLITAN UTILITIES DISTRICT OF OMAHA, a Municipal Corporation, Appellant,
v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation, Appellee.
No. 41384.
Supreme Court of Nebraska.
April 19, 1978.
*855 C. S. Brubaker, W. L. Strong, Merlin E. Remmenga, Omaha, for appellant.
John P. Ford and Larry R. Forman, of Schmid, Ford, Mooney, Frederick & Caporale, Omaha, for appellee.
Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY and WHITE, JJ., and KUNS, Retired District Judge.
C. THOMAS WHITE, Justice.
This is an appeal from the grant of a summary judgment in favor of the defendant in an action by plaintiff Metropolitan Utilities District against defendant Fidelity and Deposit Company of Maryland on a written guaranty. Plaintiff appeals. We affirm.
In January 1972, Damark Properties, Inc., entered into a contract with the plaintiff Metropolitan Utilities District of Omaha. The contract provided that the district would install a number of gas mains in Eldorado, a subdivision owned by Damark which is located at approximately 144th Street and West Dodge Road, Omaha, Nebraska. The estimated cost of this work was $26,768. Damark agreed "to construct and equip, as hereinafter set forth, within three years from the completion of the installation of said gas mains, the following:
"1. Properties abutting said distribution main that will provide gas-burning appliances with a total annual gas revenue of $13,384.00 within three years from the completion of the main. This total revenue must be guaranteed and secured by surety bond, deposit in escrow, or cash deposit, as hereinafter provided." A corporate surety bond furnished by the defendant was deposited in the total sum as provided by the contract of $26,768.
The agreement goes on to provide: "If the Applicant complies with the terms of this agreement, and produces the required revenue at the end of the three-year period, the District will release the bond or deposit in escrow or refund the cash deposit, as the case may be.
"For the purpose of determining compliance herewith, the amount of revenue produced shall be computed at the end of the three-year period and credit given as follows:
"1. $125.00 for each single-family residence equipped and connected as provided herein.
"2. The annualized revenue derived from each commercial building. Commercial buildings shall include apartments, offices, retail shops, and similar commercial structures."
The parties agree that 71 single-family residences were connected to the gas mains within the 3-year period. No commercial structures were connected.
Actual revenue generated by the 71 single-family residences in the year immediately prior to the expiration of the 3-year period was well in excess of the $13,384. The defendant, therefore, contended that it had fulfilled the terms of the agreement and the District Court sustained its motion for summary judgment. The plaintiff, however, contends that the amount which determines compliance is governed by the last-quoted paragraph which allows a $125 credit for each single-family residence. The number of houses, 71, times the $125 figure equals $8,875, which is well below the $13,384 figure. Plaintiff contends the *856 defendant owes it $9,018. This figure is arrived at through the language of another clause of the contract: "In the event Applicant fails to produce the required revenue in accordance with this agreement, the District shall be entitled to an amount equal to the estimated cost ($26,768.00) of the gas mains, less twice the annual revenues produced at the end of the three years from the completion of the mains." The difference between the cost of the mains ($26,768) and double the annual revenue as computed by the plaintiff ($8,875 X 2) is $9,018.
The plaintiff first assigns as error the granting of defendant's motion for summary judgment, since the hearing thereon was admittedly not held until after the expiration of 10 days as provided in section 25-1332, R.R.S.1943. The plaintiff had originally filed its motion for summary judgment on March 1, 1977, and the same was set for hearing on March 14, 1977. The defendant, appellee herein, filed its motion for summary judgment on March 11, 1977, and called its motion up for hearing on March 14, 1977.
Without deciding the point whether upon the motion of one party to an action for summary judgment, such judgment may be granted to the opposing party, it is sufficient to say that the plaintiff cannot be heard to raise its objection to the hearing on the defendant's motion for summary judgment in this court. The circumstance with regard to defendant's objection on the plaintiff's objection went as follows: "Mr. Remmenga: With regard to Exhibit 8, I have one other objection. It was not offered or served upon me prior to today as required by Chapter 25, Article 1332, the Nebraska statutes. * * * Incidentally, also for the record, I would object to the hearing on the defendant's motion for summary judgment for the reason that it was not filed more than ten days prior to this date.
"THE COURT: Well, let me tell you this: If you persist on that objection, I am going to set it up for whenever the ten days run because, technically, you are 100% right. When did you file this thing?" Thereafter, although there was other dialogue with respect to exhibits between the court and counsel for the plaintiff, the counsel neither persisted in his objection nor indicated to the court that he intended to abandon it. Indeed, he continued to proffer a further exhibit in evidence which he successfully argued the admissibility of. The dialogue and actions of plaintiff's attorney constituted a waiver of his objection to defendant's motion for summary judgment. Therefore, plaintiff's contention is without merit.
The trial court in its memorandum opinion determined that revenue is defined as "income; an item of income; a source of income." It pointed out that in the first paragraph in controversy, the word revenue is not followed by any such words as "as hereinafter defined" or "as defined below" and, as so used, it would be apparent that revenue in excess of the $13,384 has been generated and the defendant must prevail. It is, however, also apparent that if the term revenue, as further defined in the second paragraph under controversy, were to be considered as limited by $125 for each house, then the plaintiff should prevail. We are faced with an alternative argument by plaintiff herein. On the one hand, plaintiff maintained in the District Court, and in this court on appeal, that there exists no genuine issue of fact; therefore, the instrument, plain on its face, entitles plaintiff to judgment as prayed for in the petition and that a motion for summary judgment in its favor ought to have been sustained. On the other hand, in attacking the granting of the motion for summary judgment in favor of the defendant, the plaintiff asserts that there is a genuine issue of fact, that the contract is ambiguous, and that extrinsic evidence ought to be received to explain the meaning. We reject the plaintiff's arguments.
The plaintiff contends that in order to give effect to the entire contract, the term "total annual gas revenue" must be reconciled and limited to the provisions determining "compliance" with the revenue requirements.
*857 The defendant points out that the words "total annual gas revenue," cannot be reconciled with any words of limitation, without destroying the clear meaning of the words, which mean the amount of the charges actually made by the district during the year immediately preceding the expiration of the 3-year period. It is the defendant's contention that the $125 figure becomes operable only "in the event the applicant fails to produce the required revenue." The required revenue having been produced, the provision does not come into operation.
We believe the meaning of the term "revenue" as used in the contract is ambiguous and the trial court was correct in its interpretation. It is only when there is uncertainty, indefiniteness, or ambiguity in a contract that it is open to construction. See Smith v. Bailey, 105 Neb. 754, 181 N.W. 926. We do not feel the ambiguity is of such a nature as to require the introduction of extrinsic evidence as argued by the plaintiff.
We take note, as did the District Court, that the instrument was drafted by the plaintiff, as is apparent from the printed form and context. "In a contract upon a form prepared and regularly used by one of the parties, disputed provisions of doubtful or ambiguous meaning should be construed against the party preparing such document." Any ambiguity or doubt as to its meaning must be resolved against the party preparing the contract. Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc., 195 Neb. 292, 237 N.W.2d 645. See, also, Lyman-Richey Sand & Gravel Co. v. State, 123 Neb. 674, 243 N.W. 891. That principle is peculiarly applicable to guaranties. See Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc., supra.
The defendant here was the guarantor who furnished the surety bond required by the plaintiff. If an obligee in a guaranty draws it in a form requiring explanation, the guarantor is a favorite of the law in the interpretation of the ambiguous provision. See City Nat. Bank of Lincoln v. Denslow, 114 Neb. 600, 209 N.W. 254. A guarantor is entitled to stand upon the letter of his contract. His guaranty is not to be extended by a strained construction of the language used. See McCormick Harvesting Machine Co. v. Regier, 54 Neb. 528, 74 N.W. 957.
The guarantor was held to be entitled to the more restrictive interpretation of the contract by the trial court. We agree.
AFFIRMED.