ALFRED UTTECHT, APPELLANT, V. NORWEST BANK OF NORFOLK, N.A., APPELLEE.

376 N.W.2d 11

Filed November 8, 1985.   No. 84-435.

David J. Warnemunde and George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

Dennis W. Collins and Max G. Dreier of Jewell, Gatz & Collins, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

Plaintiff, Alfred Uttecht, appeals from an order of the Madison County District Court sustaining the defendant's motion for summary judgment and dismissing the plaintiff's petition.

On March 2, 1982, and again on September 5, Alfred Uttecht purchased a total of five certificates of deposit from the Norwest Bank of Norfolk. Four of the certificates had a face value of $1,000, and one had a face value of $1,700. All of the certificates were issued in the names of "Alfred Uttecht or Rosalla Uttecht or Gary Uttecht or Stanley Uttecht or Susan [Uttecht] Ziegenbein." It is undisputed that Alfred alone provided all of the funds used to purchase the certificates.

Stanley Uttecht, Alfred's son and one of the named depositors, owed $23,041.46 plus interest to the bank. Stanley's debt to the bank was delinquent as of August 24, 1983, and thereafter the bank set off the balances of the certificates against the amount Stanley owed.

On October 7, 1983, Alfred Uttecht filed suit against the bank, claiming that the bank's setoff action was improper and demanding a return of the funds. Essentially, Alfred argued that Stanley was not entitled to any of the proceeds of the certificates because he had made no contribution to their purchase. Since Stanley had no rights in the accounts, the bank

could not reach these funds to satisfy Stanley's debt. The bank answered and subsequently filed a motion for summary judgment on March 21, 1984, which the district court sustained.

Alfred Uttecht appeals this judgment, claiming as error the trial court's determination that, as a matter of law, the bank had the right to set off the full amount of the certificates against Stanley's debt. The bank counters that its depositor's contract with Alfred, which gives the bank broad setoff powers with respect to multiple-party accounts, should control.

Our analysis of this issue turns on an examination of relevant Nebraska statutes. Neb. Rev. Stat. § 30-2701 (Reissue 1979) includes in its definition of "multiple-party account" a "joint account." A joint account is an "account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." § 30-2701(4). A "party" to an account is one "who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account." § 30-2701(7).

Neb. Rev. Stat. § 30-2713 (Reissue 1979), one of the so-called bank protection statutes, states:

> Without qualifying any other statutory right to setoff or lien *and subject to any contractual provision*, if a party to a multiple-party account is indebted to a financial institution, the financial institution has a right to setoff against the account in which the party has . . . a present right of withdrawal. The amount of the account subject to setoff is that proportion to which the debtor is . . . beneficially entitled, and in the absence of proof of net contributions, to an equal share with all parties having present rights of withdrawal.

(Emphasis supplied.)

Finally, Neb. Rev. Stat. § 30-2708 (Reissue 1979), another of the bank protection statutes, states:

> Any multiple-party account may be paid, on request, to any one or more of the parties. A financial institution shall not be required to inquire as to the source of funds received for deposit to a multiple-party account, or to inquire as to the proposed application of any sum

withdrawn from an account, for purposes of establishing net contributions.

The bank argues that because § 30-2713 specifically provides for independent contractual arrangements between a bank and its depositors with respect to the bank's power of setoff, its depositor's contract with Alfred should control. The record indicates that the terms of the contract that Alfred signed when he purchased the certificates gave the bank a virtually unlimited right of setoff against the assets in Alfred's accounts for debts owed by him or any party to the multiple-party accounts:

> (c) Subject to rights accorded by law, Bank may, at any time and for any reason, charge to or offset against any amount then on deposit in any account (including a savings certificate), whether or not then due, any and all debts or liabilities (sole, several, joint, or joint and several, absolute or contingent, due or not due, liquidated or unliquidated, secured or unsecured) then owed to Bank by depositor *or, in the case of a multiple-party account, by any party to such multiple-party account,* and this agreement shall be construed to be the consent of depositor and any such party for the Bank to make such charge or offset if consent be required by any present or future law.

(Emphasis supplied.) It is obvious that if the terms of the contract control, the bank had the right to reach assets in Alfred's accounts for the purpose of satisfying Stanley's debt, notwithstanding the fact that Stanley contributed nothing to them.

Alfred contends that the terms of the contract should not control because of other language in the agreement which states that the bank's right of setoff is "[s]ubject to rights accorded by law" and that "[a]ll accounts and all deposits to and withdrawals from any account are subject to all applicable laws of . . . the state where the Bank is located . . . ." Those rights accorded by law, Alfred urges, are delineated by § 30-2713 and by Neb. Rev. Stat. § 30-2703 (Reissue 1979), the "net contributions" statute. Net contribution, as defined by § 30-2701(6), is the sum of all deposits made by or for a party to a joint account as of a given time, less all withdrawals made by

or for him which have not been paid to or applied to the use of any other party, plus a pro rata share of any dividends or interest included in the current balance.

In Alfred's view, these statutes limit the bank's right of setoff to those amounts actually contributed by Stanley; since Stanley contributed nothing to the purchase of the certificates, the bank had no right to set off the assets in these accounts for the purpose of satisfying Stanley's debt.

We need not decide whether Alfred's interpretation of the interplay among §§ 30-2701(6), 30-2703, and 30-2713 is correct, because we believe that the language of § 30-2713 speaks for itself.

In considering the meaning of a statute, this court will, if possible, discover the legislative intent from the language of the statute and give it effect. *Mitchell v. County of Douglas*, 213 Neb. 355, 329 N.W.2d 112 (1983). We will not read a statute as if open to construction as a matter of course. *County of Douglas v. Board of Regents*, 210 Neb. 573, 316 N.W.2d 62 (1982).

Whatever the limitations § 30-2713 may contain with respect to a bank's right of setoff, they are subject to agreements between a bank and its depositor. While it is true that the contract between Alfred and the bank stated that it was subject to the laws of the state where the bank is located, it is also true that those laws, as they currently read, provide that a bank may define by contract with its depositor the extent of its power of setoff. We conclude that, absent allegations and proof of fraud, contractual arrangements between a bank and its depositors with respect to the bank's right of setoff may supersede statutory provisions.

The order of the district court sustaining the bank's motion for summary judgment and dismissing the plaintiff's petition is affirmed.

AFFIRMED.