JACQUELINE CRAIG, APPELLEE, V. HASTINGS STATE BANK, A BANKING CORPORATION, APPELLANT.

380 N.W.2d 618

Filed January 31, 1986.   No. 84-622.

Dale A. Norris of Whelan, Foote & Scherr, P.C., for appellant.

Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, and Shanahan, JJ.

Shanahan, J.

Hastings State Bank (HSB) appeals a judgment for damages awarded after a bench trial in the district court for Adams County regarding Jacqueline Craig's action for HSB's conversion of her joint bank account. We affirm.

With money inherited from her husband, Jacqueline Craig acquired a certificate of deposit for $15,000 from Home Federal Savings and Loan Association in Hastings. As the sole payee named on the Home Federal certificate, Jacqueline redeemed that certificate on June 30, 1981, and that same day used the redemption proceeds to purchase HSB's money market certificate No. 10829 in the amount of $15,000.

HSB's certificate, a preprinted instrument drafted by HSB and utilized as the standard form for the bank's money market certificates, contained the following clause:

> On certificates made in joint survivorship, the bank may deem either or any of said payees, or the survivor or survivors as the absolute owner for purposes of payment, presentation and transfer of this certificate, payment of interest hereon, the giving or receiving of notice or any other action affecting this certificate.

HSB issued certificate No. 10829 payable to Jacqueline and her two sons, Russell Craig and Steven Craig, with rights of survivorship. Neither of Jacqueline's sons knew she had purchased the certificate, and neither made any contribution to purchase the certificate. In its letter on June 26, 1982, HSB notified Jacqueline and her sons that the bank "under the setoff provision of a promissory note from Steve Craig to the Hastings State Bank, certificate of deposit #10829 and the accumulated interest thereon has been applied to the balance of the note."

On May 9, 1983, Craig filed her petition alleging that HSB had "unlawfully converted the proceeds" of the money market certificate. In its answer HSB responded that the contract terms of the certificate permitted HSB "to pay or otherwise treat any of the named owners as absolute owners" of the certificate. The

district court, after finding that "the entire beneficial interest in the Certificate of Deposit belongs to the Plaintiff, Jacqueline Craig," and that "the provision in the Certificate of Deposit providing 'or any other action affecting this certificate' is void and must be construed against Defendant Bank as draftor [sic] of the instrument," entered judgment in Jacqueline's favor for $15,000 and interest.

HSB contends the district court erred in (1) declaring the money market certificate's wording, "or any other action affecting this certificate," void, (2) construing the certificate's contractual clause adversely to HSB, and (3) failing to recognize HSB's contractual and statutory right to set off the certificate of deposit against the indebtedness of one of the certificate's named payees.

HSB's assignments of error require examination of a bank's right, whether by contract or statute, to set off against a joint account the debt owed the depository bank by a debtor who has not contributed to the account subjected to such setoff.

In *Uttecht v. Norwest Bank of Norfolk, ante* p. 222, 225, 376 N.W.2d 11, 13 (1985), we construed the language of a contractual provision conferring a bank's right to "charge to or offset against any amount then on deposit in any account (including a savings certificate) . . . any and all debts or liabilities . . . then owed to [the] Bank by [the] depositor or, in the case of a multiple-party account, by any party to such multiple-party account." In *Uttecht* we held, under Neb. Rev. Stat. § 30-2713 (Reissue 1979), a bank can by contract obtain a right to set off the full amount of a debt owed the bank by one of the parties to a joint account, notwithstanding a possibly different result from strictly statutory provisions for a bank's setoff. Therefore, if the wording of the questioned clause in HSB's money market certificate confers on HSB the right to set off Steven's debt against the joint account with Jacqueline, *Uttecht* requires reversal of the district court's judgment.

HSB contends the phrase "any other action affecting this certificate" encompasses "all types of actions," including HSB's right to setoff against the joint account, because Steven is an absolute owner of the account. Jacqueline maintains that the phrase is not clear enough to create the contractual right to

setoff.

Our initial inquiry is governed by basic rules for construing contracts. A court is not free to speculate about terms absent from a written contract. See *Kansas-Nebraska Nat. Gas Co. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983). Where the parties have clearly expressed an intent to accomplish a particular result, it is not the province of a court to rewrite a contract to reflect the court's view of a fair bargain. See, *Gunset v. Mossman*, 196 Neb. 529, 243 N.W.2d 783 (1976); *Richardson v. Waterite Co.*, 169 Neb. 263, 99 N.W.2d 265 (1959). On the other hand, a court will construe uncertain, indefinite, or ambiguous terms in a written contract. See, *Pawnee Plastics, Inc. v. American Savings Co.*, 210 Neb. 131, 313 N.W.2d 262 (1981); *Metropolitan Utilities Dist. v. Fidelity & Deposit Co.*, 200 Neb. 635, 264 N.W.2d 854 (1978); *Timmerman Bros., Inc. v. Quigley*, 198 Neb. 129, 251 N.W.2d 877 (1977). In *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 498, 334 N.W.2d 463, 465 (1983), we stated that "absence of articulation accounts for ambiguity" and held that where a questioned clause in a written contract may be fairly interpreted in more than one way, there is ambiguity to be resolved by a court as a matter of law. When contractual language is ambiguous, a court will construe such language against the party preparing the contract, especially where the language is embodied in a preprinted form. See, *DaLee Realty, Inc. v. Kuhl*, 209 Neb. 6, 305 N.W.2d 891 (1981); *Baltes v. Hodges*, 207 Neb. 740, 301 N.W.2d 92 (1981). The policy and rationale for construction adverse to a drafter are expressed in comment *a.* to Restatement (Second) of Contracts § 206 at 105 (1981):

> Where one party chooses the terms of the contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party. The rule is often invoked in cases of standardized contracts

and in cases where the drafting party has a stronger bargaining position, but it is not limited to such cases.

Is the certificate's phrase "any other action affecting this certificate" ambiguous, requiring construction adverse to HSB as drafter of the instrument? The answer to that question must be gleaned from the contents of the particular phrase in relation to other wording of the entire certificate provision. If the particular phrase, when considered in the context of the entire certificate provision "as a whole," is susceptible to being reasonably understood in more than one sense, the phrase is ambiguous. See, *Lovelace v. Stern*, 207 Neb. 174, 297 N.W.2d 160 (1980); *Smith v. Wrehe*, 199 Neb. 753, 261 N.W.2d 620 (1978). Although a provision is not ambiguous merely because such provision is general enough to encompass more than one transaction or option, see, *Wilke v. Eau Claire First Fed. Sav. & Loan*, 108 Wis. 2d 650, 323 N.W.2d 179 (1982), and *Truck Ins. Exch. v. Marks Rentals*, 288 Md. 428, 418 A.2d 1187 (1980), the virtually unlimited breadth of a contractual provision cannot be ignored in assessing ambiguity in a provision. The phrase "any other action affecting this certificate" is not a paragon of precision. Although we certainly cannot disagree with HSB that the questioned phrase encompasses "all types of actions," we do not accept HSB's somewhat dogmatic declaration that the particular phrase compels but one conclusion—HSB's right to setoff. One must focus on the key word in the phrase examined, namely, *action*. HSB has not directed us to any meaning given in a judicial decision or dictionary which includes setoff as the meaning of *action*. Our research indicates many meanings of *action*, ranging from "a deliberative or authorized proceeding" to "a voluntary act of will that manifests itself externally" and "the entire process of betting including essentially the offering and acceptance of a bet and determination of a winner." Webster's Third New International Dictionary, Unabridged 21 (1981). The last-given meaning of *action* probably would not apply to activity in better banking circles but does point out the varied meanings of *action*. Consequently, as used in HSB's certificate, the word *action* is ambiguous. Where specific terms characterizing or enumerating a class are followed by general words capable of including more than the class specified, the

general terms are construed to refer to the same nature or kind as that of the class specified. See, *Coad v. London Assurance Corporation*, 119 Neb. 188, 227 N.W. 925 (1929); *United Cal. Bank v. Prudential Ins. Co., etc.*, 140 Ariz. 238, 681 P.2d 390 (1983); *Employers Liability Assurance Corp. v. Morse*, 261 Minn. 259, 111 N.W.2d 620 (1961). The words preceding "any other action affecting this certificate" describe situations involving delivery of funds (payment) to a named payee on surrender or redemption of the certificate, payment of interest earned on the certificate, and transmission of the information pertinent to the certificate. Thus, we construe the meaning of the word *action*, as used in HSB's certificate and for the question presented to us, to mean the bank's delivery of funds (payment) to a named payee on surrender or redemption of its certificate of deposit, payment of interest earned on a certificate, and the transmission of information pertinent to the certificate. Our construction of the phrase excludes setoff, which, in relation to a certificate of deposit, is a bank's counterdemand against funds deposited in the bank, reducing the amount payable from the funds held by the bank. We note, however, that the bank in *Uttecht v. Norwest Bank of Norfolk, ante* p. 222, 376 N.W.2d 11 (1985), used the word *offset* in describing the depository bank's contractual right to charge an account held jointly by the depository's debtor and another. A similar, modest expansion of HSB's commercial vocabulary would have eliminated the problem in this case.

Although the district court seems to have determined that the questioned wording in HSB's certificate is against public policy and, consequently, void, we do not conclude that an agreement such as that attempted by HSB is necessarily, in and of itself, against public policy. The district court was, nevertheless, correct in construing the certificate against HSB and determining that HSB's certificate did not provide for setoff.

Although HSB did not have a contractual right of setoff, we must still determine whether Nebraska statutes give HSB a right of setoff concerning the joint account in this case. We are confronted, at the outset, with an apparent inconsistency in the pertinent portion of the statutory scheme regulating multiple-party bank accounts. See Neb. Rev. Stat. §§ 30-2701

to 30-2713 (Reissue 1979).

"Joint account means an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." § 30-2701(4). Under § 30-2703(a), which sets forth the "net contributions" rule applicable to joint accounts, "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." No reasonable person would attach a meaning for "belongs to," as used in § 30-2703(a), other than "to be the property of" a person. See Webster's Third New International Dictionary, Unabridged 201 (1981).

Section 30-2703

> reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership. . . .
>
> . . . The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy.

Comment for § 30-2703.

Section 37-2701(6) defines "net contribution," namely:

> Net contribution of a party to a joint account as of any given time is the sum of all deposits thereto made by or for him, less all withdrawals made by or for him which have not been paid to or applied to the use of any other party, plus a pro rata share of any interest or dividends included in the current balance.

Section 30-2713 delineates a bank's right of setoff:

> Without qualifying any other statutory right to setoff or lien and subject to any contractual provision, if a party

to a multiple-party account is indebted to a financial institution, the financial institution has a right to setoff against the account in which the party has or had immediately before his death a present right of withdrawal. The amount of the account subject to setoff is that proportion to which the debtor is, or was immediately before his death, beneficially entitled, and in the absence of proof of net contributions, to an equal share with all parties having present rights of withdrawal.

Under § 30-2713 a bank can set off the debt of a depositor having an account with the bank, but only to the extent of the debtor's present beneficial interest in that account. When there is a joint account and proof of net contributions, the amount of the debtor's beneficial interest in such joint account is determined by the net contributions rule required by §§ 30-2703(a) and 30-2701(6). In the absence of proof of net contributions, the debtor is presumed to have an equal interest with other parties having a present right of withdrawal regarding the account. However, under the net contributions rule of § 30-2703(a) and in the absence of an agreement otherwise providing, if it is established that a nondebtor party to the account has funded all or part of the beneficial interest in an account, a bank has no right of setoff against the beneficial interest contributed by the nondebtor depositor. Within the purview of §§ 30-2703(a), 30-2701(6), and 30-2713, the uncontroverted facts disclose that Jacqueline funded the entire account and do not show that she intended to give either of her sons a present beneficial interest in the account reflected by the certificate. Therefore, HSB possessed no statutory right to set off Steven's debt against the account held jointly by Jacqueline, Russell, and Steven.

However, confusion about setoffs seems to stem from § 30-2702:

> The provisions of sections 30-2703 to 30-2705 concerning beneficial ownership as between parties, or as between parties and P.O.D. payees or beneficiaries of multiple-party accounts, are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of

withdrawal of these persons as determined by the terms of account contracts. The provisions of sections 30-2708 to 30-2713 govern the liability of financial institutions who make payments pursuant thereto, and their setoff rights.

HSB argues that, since § 30-2702 limits application of § 30-2703 only to controversies between parties to the account, the net contributions rule has no bearing upon the bank's right of setoff.

In interpreting legislation a court must attempt to construe a particular statute in conjunction with other statutes dealing with the same subject matter. See, *Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985); *Malone v. Benson*, 219 Neb. 28, 361 N.W.2d 184 (1985). However, a court must also, if possible, divine the intent of the Legislature from the plain and ordinary meaning of the statutory language. See, *In re Interest of K.S.*, 216 Neb. 926, 346 N.W.2d 417 (1984); *State Farm Mutual Auto Ins. Co. v. Fitzgerald*, 214 Neb. 226, 334 N.W.2d 168 (1983).

The plain language of § 30-2713 provides the essential and indispensable determinant of a bank's right of setoff—the debtor's present beneficial interest in the account measured by the proven net contributions of the parties to the account. Section 30-2702 does state that the provisions of §§ 30-2703 to 30-2705 are only relevant to disputes involving parties to the account, but does not specifically preclude a subsequent statutory section from incorporating the net contributions rule and, in fact, specifically refers to § 30-2713 as the statutory section governing a bank's setoff right. The language of § 30-2702 hardly compels us to ignore the clear mandate of § 30-2713.

Section 30-2708 provides additional guidance in ascertaining the import of § 30-2702. Section 30-2708 states as follows:

Financial institutions may enter into multiple-party accounts to the same extent that they may enter into single-party accounts. Any multiple-party account may be paid, on request, to any one or more of the parties. A financial institution shall not be required to inquire as to the source of funds received for deposit to a multiple-party account, or to inquire as to the proposed

application of any sum withdrawn from an account, for purposes of establishing net contributions.

As a result of the account contract authorized by § 30-2708, a bank may, without incurring liability, make payments from a joint account to any individual named in the account contract, regardless of the withdrawing individual's beneficial interest in the account. Section 30-2702, by stating that the provisions of §§ 30-2703 to 30-2705 "have no bearing on the power of withdrawal . . . as determined by the terms of account contracts," obviously reflects the Legislature's intention, manifested in § 30-2708, to insulate banks from liability in making payments from a joint account. Similarly, the comment to § 30-2702 notes that the standards governing the relationship between parties to multiple-party accounts are distinct from the standards regulating the financial institute-depositor relationship in order to "achieve the degree of definiteness that financial institutions must have in order to be induced to offer multiple-party accounts for use by their customers." Although § 30-2702 restricts the net contributions rule of § 30-2703(a) to disputes between and among parties to a joint account, the language of and comment to § 30-2702 compel the conclusion that § 30-2702 seeks only to insure that the beneficial interests of the parties have no bearing upon the bank's liability for making payment from the account. See, also, comment to § 30-2703 (§ 30-2708 protects a bank "without reference to whether a withdrawing party may be entitled to less than he withdraws as against another party"). We cannot imagine the Legislature would act so unreasonably and contrary to basic fairness as to intend that § 30-2702 would subject one's property to pay the debt of another without agreement for such disposition.

As expressed in *Erhardt v. Leonard*, 104 Idaho 197, 200, 657 P.2d 494, 497 (1983):

A joint savings account is a contractual agreement between a financial institution and the named depositors. . . . Account contracts, such as the joint savings account in this case, define the power of withdrawal held by each party to the account, as a means of protecting the financial institution. . . . But the actual ownership of the

funds in the account is not affected by the account contract.

While a bank's payment made pursuant to statute discharges the bank from all claims for the amounts paid whether such payment is consistent with the beneficial ownership of the account as between the parties, the bank, as a creditor availing itself of setoff pursuant to § 30-2713, must look to the debtor's beneficial interest in a joint account. We hold that, in the absence of an agreement otherwise providing, if a person has a present right to withdraw funds from a joint account and is indebted to the financial institution where the account is maintained, the financial institution has a right to set off against such indebtedness the debtor's beneficial interest in the account as determined by the net contributions rule of ownership in accordance with §§ 30-2703 and 30-2701(6).

According to the record before us, Jacqueline made the entire contribution to the account reflected by HSB's certificate payable jointly to Jacqueline and her sons. The "sum of all deposits" made by Steven is zero. Correspondingly, Steven had no present beneficial interest, that is, ownership, regarding the bank account held jointly with his mother and brother. Absence of Jacqueline's contractual authorization and lack of Steven's beneficial interest defeat the bank's right to setoff against the joint account existing in the present case.

The judgment of the district court is in all respects correct and is, therefore, affirmed.

AFFIRMED.