**In the Matter of Brenda OVERTON, Debtor.**

**Bankruptcy No. BK93–41104.**

United States Bankruptcy Court, D. Nebraska.

June 21, 1994.

Betts, the debtor's father, who was the sole contributor to the certificates of deposit. I conclude that the Motion by Debtor for Turnover of Property should be sustained.

### FACTS

On the day this bankruptcy case was commenced, the debtor, Brenda Overton, a/k/a Brenda Betts was a joint owner of two certificates of deposit issued by First Federal of Lincoln. The other joint owners of the two certificates of deposit were her father, Mr. Donald Betts and her brother, Mr. Brian Betts. The certificates of deposit were owned by these three parties as joint tenants with rights of survivorship. These joint owners and the issuer of the certificates of deposit, First Federal of Lincoln (the "Bank"), were subject to the contractual provisions set forth in a booklet captioned "Ownership Rights and Obligations" which in pertinent part provided:

> The account is owned by all named joint owners as joint tenants with rights of survivorship and not as tenants in common, and not as tenants by the entirety. The Association is authorized to act pursuant to any one or more of the joint tenants' signatures. Any one or more such person(s) have the power to act in all matters related to the account, including, but not limited to, the withdrawal in whole or in part of this account, and the pledging of this account in whole or in part as security for any loan made to one or more of the owners. Any such pledge shall not operate to sever or terminate either in whole or in part the joint tenancy estate and relationships reflected in or established by this contract. It is agreed by the joint owners with each other and by the owners with the Association that any funds placed in or added to the account by any one of the owners is and shall be conclusively intended to be a gift and delivery at that time of such funds to the owner or owners to the extent of his/her or their pro rata interest in the account.

> Garnishments, attachments, and other legal orders received by the Association regarding any one owner will attach any and

Richard J. Butler, Bauer, Galter, O'Brien, Allan & Butler, Chapter 7 Trustee, Lincoln, NE.

Vincent M. Powers, Lincoln, NE, for debtor.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This case involves a dispute as to ownership of the proceeds of certificates of deposit in which the debtor is a joint owner.

This case is before the court upon Motion by Debtor for Turnover of Property. The debtor requests that the trustee be ordered to turnover and surrender proceeds of jointly owned certificates of deposit to Mr. Donald

all funds in this account up to the amount of the legal order.

At the time of the filing of the bankruptcy petition, there were two certificates of deposit in which Brenda Overton was a joint owner. Each had an approximate value of $21,000.00. One such certificate was pledged as collateral for a loan to the debtor, Brenda Overton, for approximately $10,000.00. The other certificate was pledged as collateral for a loan to the debtor's brother, Brian Betts, for approximately $10,000.00. The debtor, Brenda Overton, made no contribution of money to the certificates of deposit. Her father, Donald Betts had obtained the money from the proceeds of life insurance on his deceased wife and from workmen's compensation payments and other funds which were his alone. Donald Betts used these funds to purchase a certificate of deposit in his own name with the Bank. At the time loans were made to Brenda Overton and to her brother, Brian Betts, the certificate of deposit originally obtained by Donald Betts was canceled at the insistence of the Bank and two new certificates of deposit, those now before the court, were issued in the names of the joint owners, Brenda Overton, Donald Betts, and Brian Betts.

Upon the filing of this bankruptcy case, the trustee made a claim on both certificates of deposit. Both loans on which the certificates of deposit were pledged matured after the filing of the bankruptcy petition and Brenda Overton and her brother, Brian Betts, failed to pay the Bank the amounts due and owing on the loans. The Bank obtained relief from the automatic stay in order to setoff the funds in the certificates of deposit against the indebtedness owed to it by the debtor and Brian Betts. After obtaining relief from the automatic stay, the Bank took an offset and remitted the balance of proceeds from each certificate to the trustee. Such proceeds included $10,839.21 from one certificate of deposit and $10,903.97 from the other certificate of deposit. The debtor asserts that the remaining proceeds are not property of the bankruptcy estate and should be turned over to Donald Betts, the debtor's father, as owner of these amounts.

## DISCUSSION

I conclude that the agreement between the Bank and the depositors does not govern the rights of the account holders *inter se,* that the agreement is not enforceable by the bankruptcy trustee as a third party beneficiary, and that the remaining funds from the certificates of deposit are property of Mr. Donald Betts.

Nebraska Revised Statute § 30–2722(b) provides that "during the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent." See Neb.Rev.Stat. § 30–2722(b) (West Supp. 1993). On the facts of this case it is undisputed that the debtor's father, Donald Betts contributed all of the money to the certificates of deposit. However, the trustee asserts that the contractual provisions of the agreement between the Bank and the depositors quoted above provide clear evidence that the parties intended that the certificates of deposit would be jointly owned by the three depositors.

Under the agreement, the Bank was given authority to act on the signature of any one of the three joint tenants. Further, each joint tenant was given the power to withdraw or pledge the entire amount of the certificates of deposit "to the extent of his/her or their pro rata interest in the account." The quoted language also states that the party contributing funds makes a present gift to the joint owners of "their pro rata" share, and that garnishments, attachments, and other legal orders regarding any one owner will attach to all funds in the account up to the amount of the legal order. The trustee argues that under the contract, the debtor, Brenda Overton, as a joint owner, had sufficient interest in all funds in the certificates of deposit to permit her creditors to reach all such funds in satisfaction of her separate debt, and that therefore, under § 541 of the Bankruptcy Code, all her right, title and interest in the account is property of the estate. The argument of the trustee is further buttressed by the fact that the Nebraska Supreme Court has given full force and effect to such contractual provisions to pro-

tect financial institutions. See *Uttecht v. Norwest Bank of Norfolk,* 221 Neb. 222, 376 N.W.2d 11 (1985).

■ The result asserted by the trustee is inequitable and is not mandated by Nebraska law or by the contract between the Bank and the depositors. Nebraska statutory and decisional law carefully distinguishes between the rights of a financial institution and its depositors on the one hand and the rights of the depositors *inter se* on the other hand. See Neb.Rev.Stat. §§ 30–2722 to 30–2726, 30–2727 to 30–2733 (West Supp.1993). See also *Craig v. Hastings State Bank,* 221 Neb. 746, 380 N.W.2d 618, 623–625 (1986). Contract provisions such as the ones before the court have been held to be enforceable to protect financial institutions from liability. See *Uttecht,* 376 N.W.2d at 14. Neb.Rev. Stat. §§ 30–2723, 30–2727 (West Supp.1993). Indeed, a financial institution may allow withdrawal and garnishment in an amount different from the actual ownership between the parties *inter se,* and is provided immunity in doing so. However, such contract provisions have been held not to govern the rights between the depositors *inter se* and their creditors. See *Craig,* 380 N.W.2d at 624–25. In analyzing this case, I retain this distinction.

■ Under the agreement between the depositors and the Bank, the Bank was properly allowed to take an offset from the funds of the certificates of deposit to satisfy the debt owed it by the debtor and her brother, and if the Bank had received a garnishment order or attachment, it could have surrendered all funds in the certificate of deposit accounts with immunity from liability to any joint owner. However, the liability of the Bank is not the issue before the court. The issue before the court is the ownership between the depositors *inter se* as to the remaining balance of the certificates of deposit. In regard to ownership between depositors *inter se,* Nebraska Revised Statute § 30–2722(b) governs, and the funds on deposit belong to each party in proportion to their net contribution unless the parties clearly intend otherwise. Therefore, the court must look to the intent of the parties to determine ownership.

■ In the present case, Donald Betts, the debtor's father, contributed all of the funds in the accounts. The evidence shows that originally Donald Betts purchased a certificate of deposit in his own name. Mr. Betts agreed to pledge his certificate of deposit as collateral to secure the loans sought to be obtained by his children, Brenda Overton (the debtor) and Brian Betts. In fact, it was only when the Bank insisted that Mr. Betts surrender his certificate of deposit and purchase two new certificates of deposit in the names of all three parties that Mr. Betts did so. Mr. Betts did not intend to make a gift or transfer a present ownership interest in the funds to his children. He simply intended to pledge his own funds to secure the obligations of Brenda Overton and Brian Betts to repay their loans to the Bank. Brenda Overton and Brian Betts were to make payments on the loans. Under these facts, it is clear that, as between the joint account holders, there was no evidence of an intent different from the net contributions rule. Since Mr. Betts contributed all of the money in the certificates of deposit, all of the remaining funds belong solely to him. Consequently, I conclude that the debtor, Brenda Overton, a/k/a Brenda Betts, has no ownership interest in the balance of the certificates of deposit.

The trustee also asserts that, even if the debtor does not have an ownership interest in the funds, the funds may be brought into the bankruptcy estate under § 541(a)(3) if the interest of the father and the brother are avoidable pursuant to § 544 and § 550 of the Bankruptcy Code in a separate adversary proceeding. Under § 544, the trustee is given the rights of a hypothetical lien creditor of Brenda Overton who levied upon and attached or garnished the certificates of deposit on the date of bankruptcy. If such a creditor could obtain the funds in the certificates of deposit with priority over the interests of Donald Betts and Brian Betts, then under §§ 544 and 550 of the Bankruptcy Code, the interests of Donald Betts and Brian Betts could be avoided by the trustee in a separate adversary proceeding and the motion for turnover should be denied at this time.

As stated previously, under the agreement between the Bank and the joint account holders, it was specifically provided:

> Garnishments, attachments, and other legal orders received by the Association regarding any one owner will attach any and all funds in this account up to the amount of the legal order.

Thus, it is clear that if a creditor had attached or garnished the certificates of deposit on the day this bankruptcy case was commenced, the Bank, under authority of the above language, could have honored the attachment or garnishment without liability to any account holder, and have paid out all amounts held in the certificate of deposit accounts.

■ However, it is not clear that creditors of Brenda Overton or the bankruptcy trustee can enforce the agreement between the Bank and the depositors, and thereby subject the interest of Donald Betts and Brian Betts to attachment and garnishments in satisfaction of the separate debts of Brenda Overton. The trustee and creditors of Brenda Overton are not parties to the agreement between the Bank and the depositors. Thus, they may not enforce the agreement unless they qualify as third party beneficiaries with an enforceable claim.

I conclude that lien creditors, including the trustee under § 544, are not intended beneficiaries of the contract between the Bank and the depositors, but only incidental beneficiaries thereof, and thus the trustee can not enforce the contract and its provisions as to ownership.

Under the Second Restatement of Contracts, to establish the right to sue on a contract as an intended third party beneficiary, the party asserting that right must show that the right of performance/enforcement by the beneficiary is appropriate to give effect to the intent of the parties, and either 1) the performance of the promise will satisfy a monetary obligation of the promisee to the beneficiary, or 2) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the performance. See Restatement (Second) of Contracts § 302(1) (1986). I conclude that these requirements are not met in the present case.

First, the purpose or intent of the agreement was to protect the Bank from liability, and enforcement of the contract by lien creditors is not appropriate or necessary for this purpose. Second, the promisors in this case are the depositors, who promised the Bank that they would allow the Bank to attach all funds of the certificates of deposit regardless of actual ownership upon receipt of a legal order. Therefore the Bank was the promisee. At the time the Bank entered into the contract with the depositors, it did not owe any present monetary obligations to lien creditors of the depositors. The contract merely foresaw potential monetary obligations of the depositors to lien creditors, and sought to protect the Bank from non-monetary legal liability to the depositors and the potential creditors. Third, there is no indication that the Bank, as promisee, intended to give the trustee or other lien creditor the benefit of the promised performance. The Bank only intended to protect itself from liability.

Nebraska decisional law does not clearly elaborate the degree to which a non-party to an agreement may enforce its provisions. As generally stated by the Nebraska Supreme Court:

> In order for those not named as parties to a contract to recover thereunder as third party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was made for them. *Alder v. First Nat'l Bank and Trust Co.*, 241 Neb. 873, 491 N.W.2d 686, 689 (Neb.1992) (citing *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (Neb.1983) and *Dworak v. Michals*, 211 Neb. 716, 320 N.W.2d 485 (Neb. 1982)).

■ The literal implication of the broad statement of law quoted above is that a non-party may enforce an agreement if the contracting parties expressly contemplate and provide for the non-party in any manner whatsoever. However, such a broad interpretation of the general statement of the Nebraska Supreme Court is inconsistent with reported cases which have not permitted

beneficiaries to enforce an agreement where the parties to that agreement did not intend to benefit the party seeking to enforce the agreement. *Alder*, 491 N.W.2d at 686, 688–89. The *Alder* case makes clear that mere reference to a party in a contract does not make that party a third party beneficiary with a right to enforce that contract. *Id.* In *Alder*, a partnership which had borrowed money to build a roller skating rink was seeking to enforce a guaranty agreement and an authorization agreement between the SBA and the lender, which provided that the SBA would guarantee ninety percent (90%) of the loan to the partnership only if the partnership submitted evidence that a performance bond had been obtained by the contractor before construction commenced. *Id.* at 688. In *Alder* the contractor who completed the work did not obtain a performance bond and the work proved to be defective. The partnership sued the lender as a form of recourse asserting that the agreements between the lender and the SBA obligated the lender to not disburse funds unless a performance bond was obtained. *Id.* The Supreme Court of Nebraska held that the partnership could not enforce the agreement as a third party beneficiary because there was no evidence that the agreements between the lender and the SBA were intended to do anything more than protect the SBA. *Id.* at 689.

 The facts of the present case are similar to those in *Alder* in that there is no evidence that the agreement between the Bank and the depositors was intended to do anything more than protect the Bank. The entire agreement is referable to an intent to limit the Bank's liability from a wide variety of contingencies, and the agreement, from the account holder's perspective, is a contract of adhesion whose provisions should be limited in effect to accomplish only its intended purpose of limiting the Bank's liability. There is no evidence of an intent to benefit creditors of the depositors, and without evidence of such intent, creditors can not enforce the agreement as third party beneficiaries, even under Nebraska law.

Therefore, I conclude that the trustee, as a lien creditor can not enforce the provisions of the Bank agreement providing that the Bank may honor legal orders up to the full amount of the certificates of deposit. Thus, the trustee can not avoid the interest of the father and brother in the proceeds under § 544, and such proceeds can not become property of the estate through the trustee's avoiding powers. As a result, § 544 does not provide appropriate grounds for denying the motion for turnover by the debtor.

I conclude that the ownership rights between the joint depositors are governed by the net contribution rule. Since the father, Donald Betts, contributed all of the money contained in the certificates of deposit, he is the owner of the balance, and the trustee, the debtor, and bankruptcy estate have no interest therein.

IT IS THEREFORE ORDERED, that proceeds of the certificates of deposit are not property of the bankruptcy estate.

IT IS FURTHER ORDERED, that the Motion for Turnover (Fil. # 18) is sustained. The trustee shall turnover the proceeds of the certificates of deposit to Mr. Donald Betts, the debtor's father, within twenty-one (21) days hereof.