**John A. KUEHL, Claimant,**

**John A. Kuehl, Plaintiff-Appellant,**

**v.**

**TERRE HAUTE FIRST NATIONAL BANK and Estate of Verlah E. Anderson, Defendants-Appellees.**

No. 1–881A243.

Court of Appeals of Indiana, First District.

June 28, 1982.

John E. Keller, Terre Haute, for plaintiff-appellant.

Wallace H. Grosbach, Brazil, for Estate of Anderson.

Louis F. Britton, Cox, Zwerner, Gambill & Sullivan, Terre Haute, for Terre Haute First Nat. Bank.

ROBERTSON, Judge.

Mildred Kuehl, as executrix of the estate of John Kuehl, appeals a motion for summary judgment granted by the Clay County Circuit Court in favor of the Terre Haute First National Bank and the estate of Verlah Anderson.

We affirm.

This action arises out of a contract made between Verlah Anderson, John Kuehl and the Terre Haute First National Bank. On August 11, 1972, Anderson and Kuehl opened a joint passbook savings account with rights of survivorship at the Terre Haute First National Bank. At the time the account was opened, both Kuehl and Anderson signed a signature card establishing certain provisions between the bank and the depositors. Kuehl brought the passbook home and thereafter had it in his possession. The contract required the passbook to be presented as a condition precedent to the withdrawal of funds. However, in January of 1974, the bank changed its rules and eliminated the presentation requirement for the passbook.

On August 20, 1974, Maxwell G. Cassle was appointed Anderson's guardian. On April 12, 1978, the bank paid the savings account funds to Cassle after he presented the bank certified copies of his letters of guardianship. No deposits had been made to the account since Anderson's initial deposit. The entire balance totalled nine thousand eight hundred one dollars and sixty three cents ($9,801.63), plus interest. The funds were used to open an account with the Terre Haute First National Bank in Cassle's name, as guardian for Anderson.

Kuehl filed suit in the Clay Circuit Court on November 29, 1978. The Terre Haute First National Bank was added as a party defendant on the theory that they are liable to Kuehl because they cannot unilaterally change the contract with him to his detriment. Kuehl died during the pendency of this action and his wife, Mildred, as executrix of his estate, was substituted as party plaintiff. All parties sought summary judgment and filed affidavits. The court rendered judgment for defendants, Terre Haute First National Bank and the estate of Anderson, on March 19, 1981.

This appeal presents the following issues for review:

1. Whether a bank can unilaterally modify a contract made with two joint depositors.

2. Whether a bank can be held liable to one party to a joint account for permitting the other party to the account to make a withdrawal of funds.

3. Whether a guardian can be held liable to the other depositor of his ward's joint bank account for withdrawing funds from the account.

The original contract between the bank, Anderson and Kuehl provided for presentation of the savings passbook as a condition precedent to the withdrawal of funds. In January, 1974, the bank amended its rules and discontinued the use of passbooks. Mrs. Kuehl argues that the bank could not unilaterally alter a contract with two joint depositors. She maintains that the parties continued to be governed by the terms set forth in the passbook requiring presentation of a passbook for the withdrawal of funds.

However, Article X of the passbook rules and regulations clearly sets forth a provision for amendment of the rules. Article X provides as follows:

AMENDMENTS. These rules may be altered, amended or rescinded or new rules may be made at any time and from time to time and upon posting a copy of such alterations, amendments or new rules in the banking room of the Bank for ten days, they shall be binding upon the Bank's customers as though expressly assented to by them respectively.

Fundamental contract law provides that original contracts may provide for modification. A contractual provision so changed is as voluntary and consensual as the original contract. 17 Am.Jur.2d *Contracts* § 465 (1964). Indiana courts have also recognized that when a bank deems it advisable, it may take such steps as are necessary to amend or reverse its rules. *See, Badders v. People's Trust Co.,* (1957) 236 Ind. 357, 140 N.E.2d 235. Consequently, the bank acted entirely within the bounds of its authority when it amended its rules eliminating the use of passbooks.

In addition, the evidence shows that Kuehl took actual possession of the passbook and consequently, he at least had constructive notice of the amendment provision set forth in Article X. Both Anderson and Kuehl signed the signature card giving their assent to be bound by the bank's rules and regulation. Furthermore, the bank gave their customers notice of the change in its rules by mailing them a copy of the amendment, together with a letter from the bank's president outlining the change in procedure. The evidence presented at trial demonstrates that the bank was not only authorized to amend its rules, but that it followed the proper procedures for doing so. The bank also took substantial steps toward informing its customers of the revised rules and regulations.

Consequently, we find no error in regard to the bank's modification of the contract between Anderson and Kuehl.

The second issue concerns whether the bank can be held liable to the estate of Kuehl for allowing Cassle to withdraw the funds held in the joint account. The Indiana legislature has enacted Ind.Code 32–4–1.5 regarding multiple party accounts. Section two governs the liability of financial institutions to make payments and their setoff rights.

IC 32–4–1.5–8 provides, in pertinent part, that:

Financial institutions may enter into multiple-party accounts to the same extent as that they may enter into single party accounts. Any multiple-party account may be paid on request to any one or more of the parties. A financial institution shall not be required to inquire as to the source of the funds received for deposit to any multiple-party account, or to inquire as to the proposed application of any sum withdrawn from an account, for the purpose of establishing net contributions.

IC 32–4–1.5–9 provides, in part:

Any sums in a joint account may be paid, on request, to any party without regard to whether the other party is incapacitated or deceased at the time payment is demanded. . . .

IC 32–4–1.5–12 provides:

Payment made pursuant to Section 8 (32–4–1.5–8), 9 (32–4–1.5–9), 10 (32–4–1.5–10), or 11 (32–4–1.5–11) of this chapter discharges that financial institution from all claims for amounts so paid whether or not the payment is consistent with the beneficial ownership of the account between the parties. . . .

These statutes define the liability of a bank in making payment on joint accounts and clearly preclude the imposition of liability for making payment to one of the parties. Furthermore, IC 28–1–20–1 provides a means by which a party to a multiple-party account may put a bank on notice of an adverse claim, so that if the bank makes payment to another party while on notice, it does so at its peril.

In the present case, Kuehl did not give the bank notice of any adverse claim

on the jointly held account. As previously set forth, there was no requirement to present the passbook. The bank paid the money to the court appointed guardian of one of the joint depositors.

■ These facts, together with the foregoing statutes, preclude any liability on the part of the Terre Haute First National Bank.

The last issue to consider is whether a guardian can be held liable to the other depositor of his ward's joint bank account for withdrawing funds from the account. IC 32–4–1.5–3 states that:

> (a) a joint account belongs, during a lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit unless there is clear and convincing evidence of a different intent.

There is evidence showing that Anderson contributed all the money in the joint account. Thus, according to the above statute the entire account belonged to her during her lifetime and the funds could have been withdrawn at anytime. Because the funds held in the joint account were Anderson's personal property, her guardian had an affirmative duty to take control of the account. IC 29–1–18–30 provides in pertinent part:

> The guardian of the estate shall take possession of all the ward's real and personal property . . . .

In addition, IC 29–1–18–28(b) (Supp.1981) provides:

> It is the duty of the guardian of the estate to protect and preserve it, to invest it, to apply it as provided in IC 29–1 [29–1–1–1—29–1–20–1], to account for it faithfully . . . . .

IC 32–4–1.5–1(7) provides that guardians are parties to multiple party accounts.

It is clear from the above statutes that Anderson's guardian had a duty to take custody of the funds in the account and invest them. He did this by withdrawing the funds and investing them to earn a higher rate of interest. A guardian cannot have any liability for performing his statutory duty.

For the foregoing reasons, we affirm the decision of the trial court.

Judgment affirmed.

RATLIFF, P. J., and YOUNG, J. (sitting by designation), concur.