**BROWNING & HERDRICH OIL COMPANY, INC., Plaintiff-Appellant,**

v.

**Gerald HALL, Judgment Defendant.**

**DECATUR COUNTY BANK,
Garnishee Defendant,**

v.

**F. Opal HALL, Appellee.**

**No. 1–785A173.**

Court of Appeals of Indiana,
First District.

March 12, 1986.

Ronald L. Wilson, Badell & Wilson, P.C., Rushville, for Browning & Herdrich Oil Co., Inc.

William Orville Smith, Greensburg, for F. Opal Hall.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Browning & Herdrich Oil Company, Inc. (Browning), appeals a judgment of the Decatur Circuit Court denying the garnishment of certain certificates of deposit (CDs) in the name of the judgment-defendant Gerald Hall (Gerald), and a third party, Opal Hall (Opal).

We affirm.

## STATEMENT OF THE FACTS

The undisputed facts are as follows. Browning, in his suit against Gerald on an open account for goods and services, obtained a default judgment of principal and interest in the amount of $17,406.83. Omitting numerous procedural steps, the record shows that Browning, in proceedings supplemental, discovered certain CDs issued by the Decatur County Bank to "Opal Hall and/or Gerald Hall," in the amount of $19,-300.00, and a savings account in the amount of $2,892.00, likewise joint between Opal and Gerald, upon which it attempted to levy.

Opal, Gerald's mother, is a 72 year old widow. She is the owner of CDs in the amount of $43,600.00 issued by the Decatur County Bank, $24,300.00 of which was issued in the names of "Opal Hall and/or Grethel Manlief," her daughter, and $19,-300.00 of which was issued in the names of "Opal Hall and/or Gerald Hall." The funds for the CDs and the savings account were contributed solely by Opal, and neither Gerald nor Grethel Manlief (Grethel) contributed anything to the accounts. The source of the contributions was from a lifetime of earned income; savings; the sale of property once owned by her; the settlement of her husband's personal injury claim; the sale of stock; a profit sharing plan from where she worked; and miscellaneous rent, interest and other income. Only her social security number was registered on the CDs and the savings account, and she alone received the interest, which was reported by her on her annual income tax returns. She alone kept the CDs and passbook in her lockbox, kept the only key, entered the box alone, and renewed the CDs when they came due. She once loaned Gerald $5,000.00, taking it from a CD which she held jointly with him, thus accounting for the disparity in amounts between the children. Neither Gerald nor Grethel had ever exercised any physical control over the CDs, or the lockbox. Though Gerald knew of the CDs, he had no real knowledge even of their amounts.

Opal's intention, upon advice by the Bank itself, in placing the CDs and savings account in joint titles was testamentary in nature in order to save administration expenses and attorney fees upon her death. At no time did she ever intend to make an inter vivos gift of any part of the CDs to either Gerald or Grethel.

The trial court denied Browning's garnishment of the CDs upon findings of fact which essentially summarized the foregoing evidence. In conclusions of law, the court held that the matter was governed by IND. CODE 32-4-1.5-3(a), that Opal had never intended to make an inter vivos gift, and that Gerald had no present interest in the CDs which Browning attempted to garnish.

## ISSUE

The sole issue is whether a judgment creditor has a right to garnish the interest of a joint account owner who is not a judgment debtor.

## DISCUSSION AND DECISION

■ Browning concedes, and Opal agrees, that a judgment attaches only to the interest that the judgment debtor has, actually or effectively, in the property. The lien cannot attach to any greater interest than either the debtor himself has, or, in the exercise of his rights, that he could have voluntarily transferred. *See* 17 I.L.E. *Judgments* Sec. 465 (1959). *See also* IND. CODE 34-1-11-20.

There is further no dispute that a negative judgment will be reversed only where

the evidence is without conflict and leads to but one conclusion which is contrary to the decision reached by the trial court. *Brand v. Monumental Life Insurance Co.* (1981), 275 Ind. 308, 417 N.E.2d 297. When reviewing a case in which the trial court has made findings of fact and conclusions of law, an appellate court will not set aside the trial court's judgment unless it is clearly erroneous. Ind. Rules of Procedure, Trial Rule 52; *Lawrence v. Ball State University Board of Trustees* (1980), Ind.App., 400 N.E.2d 179. We do not reweigh the evidence or determine the credibility of the witnesses, but will consider only that evidence and the reasonable inferences therefrom which support the judgment. *Sigsbee v. Swathwood* (1981), Ind.App., 419 N.E.2d 789; *See also* T.R. 52.

Reduced to its essence, the real question is whether Gerald has sufficient present interest in the CDs to make them subject to garnishment for a judgment against him alone. We are of the opinion that he does not.

Fundamental to the resolution of the issue at hand is IND. CODE 32–4–1.5–3(a), enacted in 1976, which reads as follows:

"A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."

An "account" includes savings accounts and CDs. IND. CODE 32–4–1.5–1(1). Under IND. CODE 32–4–1.5–3, in the official comment to the Uniform Probate Code from which this section was taken, the Indiana Probate Code Study Commission stated:

"This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership. The assumption may be disproved by proof that a gift was intended.

\*      \*      \*      \*      \*      \*

The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy."

The Commission concluded that the underlying assumption is that most persons who use joint accounts want the survivors to have all balances remaining at death. The Commission further commented that under IND. CODE 32–4–1.5 a joint bank account does not qualify as a common law gift because the donor does not surrender dominion.

■ Browning attempts to escape the rather obvious consequences of IND. CODE 32–4–1.5–3(a) by raising a number of arguments. First, it argues that since Gerald could have cashed the CDs upon his own signature had he had possession of them, he thus was an owner of the funds, and therefore, the funds are subject to garnishment. Browning points to other sections of IND. CODE 32–4–1.5 to bolster his argument.

IND. CODE 32–4–1.5–8 provides that:

"[f]inancial institutions may enter into multi-party accounts to the same extent as that they may enter into single party accounts. Any multiple-party account may be paid on request to any one (1) or more of the parties. A financial institution shall not be required to inquire as to the source of the funds received for deposit to any multiple-party account, or to inquire as to the proposed application of any sum withdrawn from an account, for the purpose of establishing net contributions."

IND. CODE 32–4–1.5–9 provides in part that:

"[a]ny sums in a joint account may be paid, on request, to any party without regard to whether the other party is incapacitated or deceased at the time payment is demanded; ...."

IND. CODE 32–4–1.5–12 provides in part that:

"[p]ayment made pursuant to Section 8 [32–4–1.5–8], 9 [32–4–1.5–9], 10 [32–4–1.-5–10], or 11 [32–4–1.5–11] of this chapter discharges the financial institution from all claims for amounts so paid whether or not the payment is consistent with the beneficial ownership of the account between the parties...."

Nevertheless, such provisions are merely for the protection of the bank and do not determine ownership. IND. CODE 32–4–1.5–2 provides as follows:

"The provisions of sections 3 [32–4–1.5–3], 4 [32–4–1.5–4], and 5 [32–4–1.5–5] of this chapter concerning beneficial ownership as between parties, or as between parties and P.O.D. payees or beneficiaries of multi-party accounts, are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts. The provisions of sections 8 [32–4–1.5–8] through 13 [32–4–1.5–13] of this chapter govern the liability of financial institutions who make payments pursuant thereto, and their setoff rights."

Cases have construed IND. CODE 32–4–1.5–3. *Kuehl v. Terre Haute First National Bank* (1982), Ind.App., 436 N.E.2d 1160, involved a fact situation where the guardian took possession of a joint savings account, the funds of which were provided solely by his ward. We held that under the statute the entire amount belonged to the ward and the guardian had an affirmative duty to take control. This was so even though it defeated the right of survivorship of the joint tenant. That case also referred to IND. CODE 32–4–1.5–8, 9 and 10 as statutes defining the liability of the bank.

*Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92, concerned a dispute over a joint bank account created by a father, the sole contributor of the funds, with his son. Upon the father's remarriage, the son withdrew the entire amount. In ruling for the father in his suit to reclaim the funds, we held that the father, under IND. CODE 32–4–1.5–3(a), was the owner of the entire fund, as there was no clear and convincing evidence of an intent to make a gift to the son. The son had no present interest.

■ Browning next argues that Opal intended to make an inter vivos gift. In *Rogers, supra,* 437 N.E.2d at 96, we said:

"The mere fact that money is deposited in a joint bank account to the credit of the owner and another is not sufficient to show an intent to make a gift to the other. There must be intent to give and deliver and an irrevocable surrender of control of the funds. One of two joint tenants of money deposited in a joint bank account cannot, by withdrawing the money without the other's knowledge and consent, divest the other of his joint ownership therein. Furthermore, joint tenants hold 'by the half and by the whole,' and may dispose of their individual interests during their lives, but, if they fail so to do, the entire goes to the survivor. However, neither joint tenant can dispose of the interest of the other in life." (Citations omitted.)

Browning cites cases from other jurisdictions, either decided under the common law or under statutes different from IND. CODE 32–4–1.5–3(a), which suggest some vulnerability of joint bank accounts to seizure by creditors under certain situations. Joint bank accounts have become a popular and an almost universal tool used by the bar in estate planning, and their advantages need no explanation. Under those cases which create risk to the contributor, the creator of the joint bank account whose intent is usually testamentary in nature, could be impoverished by the acts of the joint tenant over which the creator has no control, as creditors of the joint tenant could garnish the account, and the joint tenant himself could, as attempted in *Rogers,* demand and take some portion of it. It

appears that it was these evils which the Act intended to curb, thus lending stability and security to the creation of joint bank accounts. Those old cases are not authority for the issue here.

Browning also relies upon *Moore v. Bowyer* (1979), 180 Ind.App. 429, 388 N.E.2d 611, *trans. denied; Robinson v. Fickle* (1976), 167 Ind.App. 651, 340 N.E.2d 824, *trans, denied; In re Estate of Fanning* (1975), 263 Ind. 414, 333 N.E.2d 80. Such reliance is misplaced. *Fanning,* decided before the passage of IND. CODE 32–4–1.-5–3, concerns ownership of CDs after the death of one of the joint tenants. *Robinson, supra,* likewise decided prior to the enactment of the statute, also involved a conflict between the decedent's estate and a surviving joint tenant. *Moore, supra,* also involved conflicting ownership claims between the surviving joint tenants and the decedent's estate. These cases are not authority for the issue here either.

IND. CODE 32–4–1.5–3(a) is perfectly clear. It needs no judicial construction or interpretation. It is controlling and the court correctly applied it. We hold that insomuch as Opal contributed all of the funds for the purchase of the CDs, and since there was no clear and convincing evidence of an intent to make an inter vivos gift, she alone owned the CDs. They were not owned by Gerald, and they were thus not subject to garnishment by Browning in its attempt to satisfy its judgment against him.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON, P.J., concurs.

RATLIFF, J., concurs with opinion.

RATLIFF, Judge, concurring.

I agree that under the Indiana statute, Indiana Code section 32–4–1.5–3(a), ownership of a joint bank account during the lifetime of the parties is owned by them in proportion to their contributions. Therefore, only the funds in a joint account actually belonging to a judgment debtor may be reached by proceedings supplemental, garnishment, or execution in satisfaction of the debt. Cases from other jurisdictions so hold. *Hayden v. Gardner* (1964), 238 Ark. 351, 381 S.W.2d 752; *Yakima Adjustment Service, Inc. v. Durand* (1981), 28 Wash. App. 180, 622 P.2d 408. Such is the majority rule. *Durand,* 622 P.2d at 411; Annot: 11 A.L.R. 3d 1465, 1469 (1967). The rule is succinctly stated in *Durand,* in the following language:

"It is well established that a creditor has no greater rights to a fund than his debtor, ... (Citations omitted). To allow the judgment creditor to garnishee and obtain all of the funds of a joint account, when the debtor has no ownership interest in the account, would result in giving greater rights to a creditor than his debtor. In the light of the foregoing, we hold that the garnishment of a joint bank account reaches only those funds owned by the debtor."

622 P.2d at 411.

The question left unanswered by the majority and not addressed by the parties is that of the burden of proof on the issue of ownership of the funds in the joint account. In other words, must a judgment creditor upon discovery of a joint bank account held by his debtor and another be held to the burden of proving his debtor's interest, or do the joint depositors bear that burden? I believe that burden properly rests with the joint depositors, and it has been so held. *Hayden,* 381 S.W.2d at 754; *Durand,* 622 P.2d at 411. Most courts hold that whether it is presumed all the money belongs to the debtor or whether it is presumed the debtor and his joint depositor own the account equally, the burden rests with the depositors to prove the amount of funds actually owned by the debtor. 11 A.L.R.3d at 1476–77. A few courts have placed this burden on the creditor, 11 A.L.R. 3d at 1477. In my view, this latter view is unrealistic and places the burden where it clearly does not belong. I agree with the Arkansas Supreme Court that placing the burden of proof on the depositors "is the fair and reasonable rule because the depos-

itors are in a much better position than the judgment creditor to know the pertinent facts." *Hayden*, 381 S.W.2d at 754.

Because I believe the issue of who bears the burden of proof on the extent of the debtor's ownership of the funds in the joint account to be of utmost importance, I have addressed that issue in this concurring opinion. Further, because I believe that burden properly rests upon the joint deposi-

tors, I consider the majority opinion's discussion of appeals from negative judgments to be inapplicable and inappropriate to this case.