In the Matter of the ESTATE OF John Ben MAXFIELD, Deceased.

Ben J. MAXFIELD and Joy M. Thornock, Appellants and Cross–Appellees,

v.

Louise A. MAXFIELD, Appellee and Cross–Appellant.

No. 900533.

Supreme Court of Utah.

April 15, 1993.

Rehearing Denied July 27, 1993.

William J. Critchlow, Ogden, for appellants.

Douglas B. Thomas, R. Stephen Marshall, Douglas A. Taggart, Salt Lake City, for appellee.

HOWE, Associate Chief Justice:

Appellants Ben J. Maxfield and Joy M. Thornock are the children of John Ben Maxfield (Ben), who died in 1989. They appeal from an order entered in the probate proceedings of Ben's estate that Ben's wife, Louise A. Maxfield, appellee herein, is entitled to one-half of all amounts that were on deposit in seven joint bank accounts and certificates of deposit on November 25, 1986. Appellants seek reversal of the trial court's order and, in its stead, an order that Ben's estate is entitled to recover all amounts Ben contributed to the joint accounts, together with the interest.

When Ben and Louise married in 1961, they each had children from previous marriages. At that time, Louise had approximately $1,200 in a checking account and owned a home in Ogden in which Louise and Ben lived until November 1986. Ben had approximately $500 in a checking account and owned a farm, some residential property, and stock in a gravel company. During the marriage, Ben and Louise established with the Bank of Utah a joint checking account, a joint savings account, and five joint certificates of deposit. The certificates of deposit listed various children of Louise or Ben as additional joint owners, although there is no indication that anyone other than Ben and Louise contributed to the accounts. During the marriage, Louise deposited all her earned income into the joint accounts.[1] Ben similar-

---

1. The record reflects that during the marriage, Louise received a $12,000 inheritance that she

ly deposited his earnings, social security benefits, and retirement benefits into the joint accounts. Proceeds from various real estate transactions, including sales of the residential property Ben brought to the marriage and sales of property acquired in exchange for Ben's gravel company stock, were also deposited into the accounts. As of November 25, 1986, the funds in these accounts totalled $273,833.60.

On that date, Louise withdrew all the funds from the five joint certificates of deposit. On December 1, 1986, she withdrew all the funds from the joint checking and savings accounts. She redeposited the entire amounts, less early withdrawal penalties, into five accounts, each payable on her death to one of her three children or to one of Ben's two children, respectively, and into several other accounts held jointly with her own children. Thereafter, Ben commenced litigation to recover the funds. He died on December 3, 1989, and the resolution of the ownership of the funds withdrawn from the joint accounts became part of this probate proceeding.

Appellants contend that Louise, by her unilateral withdrawal of the joint accounts, destroyed the joint tenancy and extinguished her right of survivorship. The court below accepted this proposition, relying in part on *First Security Bank v. Demiris,* 10 Utah 2d 405, 354 P.2d 97 (1960). Louise does not contest this ruling. Accordingly, we view the joint tenancy as terminating on Louise's withdrawals on November 25, 1986, and December 1, 1986. We must therefore determine the ownership of the funds as of that time.

Appellants and appellee also agree that Utah Code Ann. § 75–6–103(1) of the Utah Uniform Probate Code should govern the determination of the ownership of the funds Louise withdrew from the joint accounts. The parties disagree only as to the application of section 75–6–103(1) to the facts. That section provides, "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." The parties disagree on the valuation of the "net contributions" Louise and Ben each made to their joint accounts.

The trial court found that Louise and Ben "bought and sold property, and they made investment.... [T]he bulk of the property that J.B. [Ben] Maxfield had lost its character as separate property and became marital property through those transactions.... Therefore, as it applies to the accounts, I find that each contributed one half." Appellants urge this court to reverse this finding as not supported by the evidence and contrary to the provisions of section 75–6–103(1).

To bring uniformity to the law and to eliminate confusion caused by conflicting decisions, the Uniform Probate Code in section 6–103 (Utah Code Ann. § 75–6–103) provides a clear test to be applied when determining the ownership of funds on deposit in a joint account during the lifetime of the parties. The editorial board comment to section 75–6–103 states:

> This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he [or she] usually intends no present change of beneficial ownership. The assumption may be disproved by proof that a gift was intended.

In contrast, companion section 6–104 (Utah Code Ann. § 75–6–104) provides that on the death of a joint owner, the funds on deposit belong to the survivor(s) unless there is clear and convincing evidence of a different intent. The Supreme Court of Ohio has observed that "the presumptions created by these two sections accurately reflect the common experience of mankind in regard to joint and survivorship accounts." *In re Estate of Thompson,* 66

kept in a separate account and that she received social security benefits which she used to buy groceries.

Ohio St.2d 433, 439, 423 N.E.2d 90, 94 (1981).

Page 4 of the 1992 supplement to volume 8 of Uniform Laws Annotated indicates that twenty-seven states have adopted the provision found in section 75–6–103 dealing with multiple-party accounts. Appellate courts in those jurisdictions hold uniformly that this statute requires a joint owner of a bank account to establish by clear and convincing evidence that the other joint owner, when depositing his or her own separate funds in the account, intended to make a gift of one-half of the deposit to the other joint owner. *Battiste v. Battiste*, 135 Ariz. 470, 662 P.2d 145 (Ct.App.1983); *Erhardt v. Leonard*, 104 Idaho 197, 657 P.2d 494 (Ct.App.1983); *Szelenyi v. Miller*, 564 A.2d 768 (Me.1989). The provision of the statute, including the burden of proof imposed on the nondepositing joint owner, is not altered or changed in any way when the joint depositors are married to each other. The funds retain their separate character unless a gift is proved. *Noble v. Noble*, 26 Ariz.App. 89, 93, 546 P.2d 358, 362 (1976); *Battiste*, 135 Ariz. at 473, 662 P.2d at 148; *Szelenyi*, 564 A.2d at 770.

The ownership of the funds as of the time Louise unilaterally withdrew all the amounts in the joint accounts must be determined. This was in November and December of 1986, when both parties were alive and living together and no divorce action had been filed. However, in determining ownership of the funds as of those dates, the trial court departed from the wording of section 75–6–103 and applicable case law and circumvented the inquiry required by that section. Instead, it erroneously substituted our case law dealing with the distribution of marital property in divorce cases. Admittedly, in a divorce case the court has broad equitable powers to make a fair distribution of the parties' property irrespective of the form of ownership in which it may be held. However, this is not a divorce case, nor is it a case of a widow endeavoring to get her rightful share of her husband's estate. Thus, the analysis indulged in by the trial court is faulty, being misdirected from the provisions of the statute. At least one state, New Jersey, has expressly recognized this distinction by including in its version of section 6–103 of the Uniform Probate Code the following: "This subsection shall not be construed to affect the right of the court to effectuate an equitable distribution of property between the parties in an action for divorce...." N.J.Stat.Ann. 17:16I–4. The Supreme Judicial Court of Maine stated in *Szelenyi* that in determining the prospective interests of spouses in jointly owned property, the terms "marital estate" and "marital property," which are pertinent in dividing property upon divorce, have no "application to the present situation in which a divorce or legal separation is neither pending nor contemplated." 564 A.2d at 770. Appellee cites no cases arising under section 6–103 in which the marital property analysis was used, and our research has yielded none. That analysis completely ignores the fact that the statute requires clear and convincing evidence that the person deposited his or her own funds with the present intent to make a gift of one-half to the other joint depositor.

Many of the cases arising under section 6–103 are not contests between the joint depositors but are attempts of a judgment creditor to reach the interest of a judgment debtor in a multiple-party account. Under the trial court's analysis, it would be risky for spouses to put their earnings and savings into joint accounts because a judgment creditor of either spouse could always reach one-half of the balance in the account even though the judgment debtor had made no contribution to the account. In cases which have been decided under section 6–103, the judgment creditor can reach only those funds in the joint account that the judgment debtor contributed. *Browning & Herdrich Oil Co. v. Hall*, 489 N.E.2d 988 (Ind.Ct.App.1986); *Szelenyi*, 564 A.2d at 770; *Craig v. Hasting State Bank*, 221 Neb. 746, 380 N.W.2d 618 (1986); *Republicbank Dallas v. National Bank of Daingerfield*, 705 S.W.2d 310 (Tex.Ct.App. 1986).

Joint accounts are sometimes referred to as a "poor man's will." This is because

under section 6–104 of the Uniform Probate Code (Utah Code Ann. § 75–6–104), "all sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is a clear and convincing evidence of a different intention at the time the account is created." Thus, joint accounts provide a simple and inexpensive method of passing the funds in the account from a deceased joint owner to the surviving joint owner, completely avoiding the necessity of any probate proceedings. However, that utility will be lost if during the lifetime of the joint depositors, if they are husband and wife, one-half of the amount on deposit can be reached by the judgment creditor of either spouse. See *Browning & Herdrich Oil Co.*, 489 N.E.2d at 991, where the court observed, "Joint bank accounts have become a popular and an almost universal tool used by the bar in estate planning, and their advantages need no explanation." However, the court warned, if "the creator of the joint bank account whose intent is usually testamentary in nature[ ] could be impoverished by the acts of the joint tenant over which the creator has no control," such as attempts of the other joint tenant or his creditors to reach the funds, there is a great risk to the creator. *Id.* "It appears that it was these evils which [section 6–103] intended to curb, thus lending stability and security to the creation of joint bank accounts," the court concluded. *Id.* at 991–92.

The editorial comment to section 6–103 stresses the individual ownership of the deposits of each joint owner during his or her lifetime:

> The theory of these sections [6–103 and 6–104] is that the basic relationship of the parties is that of *individual ownership of values* attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values *theretofore owned by another* which the survivor receives for the first time at the death of the owner. That is to say, the account

operates as a valid disposition at death rather than as a present joint tenancy. (Emphasis added.)

Additionally, the editorial board comment points out that gift tax liability may arise if one spouse makes a large deposit, such as from a family inheritance, in a joint account and the statute is interpreted to automatically give the other spouse a one-half interest therein. Section 6–103 was drafted advisedly to avoid gift tax consequences unless the party making the deposit clearly and convincingly evidences his or her intent to make a gift of one-half of the deposit.

The statute requires that Louise prove by clear and convincing evidence that when Ben deposited his own funds, he did so with the present intent of making a gift of one-half to her. Observance of this statutory requirement is particularly important in a case such as this, where the marriage is the second for both parties and they have no children by this marriage but both have children by their former marriages. It would be quite natural and logical for them to intend separate ownership during their lifetime of all or part of their respective deposits in the seven joint accounts, which had total balances of $273,833.60 when Louise withdrew them.

The order awarding Louise one-half of the balances in the accounts is reversed, and the case is remanded to the trial court to conduct the inquiry required by section 75–6–103, as explained in this opinion.

HALL, C.J., and STEWART, J., concur.

DURHAM, Justice (dissenting):

I agree with the legal standard described by the majority opinion and with the construction it applies to Utah Code Ann. § 75–6–103. I disagree, however, with the majority's interpretation of what the trial court did in this case. My review of the record, including the evidence at trial and the trial court's findings and conclusions, convinces me that the trial court followed the statute and entered a judgment supported by substantial evidence.

The trial court found that during their twenty-eight-year marriage, the monies, financial affairs, and business of Louise and

Ben Maxfield were extensively intermingled. In its findings of fact, the court specifically found, "The bulk of the property brought into the marriage by John Ben Maxfield lost its character as separate property and became marital property to which each contributed one-half (1/2)." The use of the term "marital property" in this context may have been unfortunate and has, I think, misled the majority regarding the nature of this finding. In light of the extensive joint participation of both Louise and Ben in every aspect of the management and sale of their assets (including those brought into the marriage by Ben and those acquired and developed during the marriage), it seems clear to me that the trial court regarded as jointly owned the majority of the monies placed into the Maxfield accounts *as of the time they were deposited.* This view is consistent with the trial court's oral statement at the end of trial: "Therefore, as it applies to the accounts, I find that each contributed one half. Finding anything different would have to be simple speculation on my part as to what percentage each contributed at that point."

The trial court's judgment is supported by the law and the facts. I would affirm.

ZIMMERMAN, J., concurs in the dissenting opinion of DURHAM, J.