Ronald ENRIGHT, as attorney-in-fact for S.E., et al., Respondents,

v.

Robert H. LEHMANN, Appellant,

Lehmann Engineering, Inc., Defendant.

No. A06–347.

Supreme Court of Minnesota.

July 19, 2007.

Carol S. Cooper, C.S. Cooper Law Firm, Ltd., Farmington, MN, for Appellant.

Robert J. Bruno, Robert J. Bruno, Ltd., Burnsville, MN, for Respondent.

Associated Bank, Burnsville, MN, for Associated Bank.

Eric J. Magnuson, Diane B. Bratvold, Minneapolis, MN, for Amicus Probate and Trust Section of MSBA.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant challenges the garnishment of funds deposited by his wife in their joint bank account to satisfy a judgment entered against him. The district court and court of appeals, relying on *Park Enterprises v. Trach*, 233 Minn. 467, 47 N.W.2d 194 (1951), held that all funds in a joint account, regardless of the identity of the contributor, may be garnished to satisfy the debt of any account holder. We reverse and hold that the plain language of the Multi–Party Accounts Act, Minn.Stat. § 524.6–203(a) (2006), prevents a creditor from garnishing funds in a joint account not contributed by the debtor unless the creditor proves by clear and convincing evidence that the depositing party intended to confer ownership of the funds on the debtor.

In 1999, appellant Robert H. Lehmann, d/b/a Lehmann Engineering, Inc., entered into a lease for commercial property with respondents S.E. and Marlys Enright, d/b/a Pride–One Co. ("Enright"). In 2005, Enright sued both Lehmann and the engineering corporation for rents due. Lehmann served a pro se answer denying liability on the grounds that the corporation, not Lehmann, was party to the lease. The corporation did not answer. Enright obtained a default judgment against the corporation and continued the litigation against Lehmann individually. Enright served discovery on both the corporation and Lehmann, but neither answered Enright's discovery requests or a later district court order compelling responses. Lehmann also did not file his answer with the court. Ultimately, the court struck Lehmann's answer, granted a default judgment against him for rent due and attorney fees, and awarded judgment against him for attorney fees for his discovery violations. Lehmann has explained that illness prevented him from understanding or participating in the lawsuit, but the district court and court of appeals rejected this explanation. *Enright v. Lehmann*, 724 N.W.2d 546, 550–51 (Minn.App.2006).

To satisfy the judgments, Enright garnished two joint bank accounts held in the names of Lehmann and his wife, Zandra Lehmann. Lehmann asserts, and Enright agrees, that Zandra deposited all the money in the joint accounts. Lehmann claimed that the accounts could not be garnished because the funds in those accounts belonged to Zandra, and he moved for an order staying execution of the judgments, dissolving the garnishments, reinstating his answer, and allowing him to amend his answer to assert a counterclaim. The district court denied these motions. The court of appeals, relying on *Park Enterprises*, affirmed and held that Enright was subrogated to Lehmann's unlimited right of withdrawal of the funds in the joint accounts. *Enright*, 724 N.W.2d at 549.

In this appeal, Lehmann claims the funds at issue were not subject to garnishment because those funds were the property of his wife alone. At no time has Enright attempted to show that Zandra intended to confer ownership of the funds on her husband by placing them in the joint accounts; rather, Enright has taken the position that Zandra owns the funds but their location in the joint bank accounts renders them attachable by garnishment for Lehmann's debt.

## I.

As a threshold matter, Enright argues that Lehmann lacks standing to challenge the garnishment of the accounts. Although appellate review was neither requested nor granted on this issue, standing is essential to our exercise of jurisdiction. *Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 27 (Minn.1989). Standing is a legal requirement that a party have a sufficient stake in a justiciable controversy to seek relief from a court. *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Standing is acquired in two ways: either the plaintiff has suffered some "injury-in-fact" or the plaintiff is the beneficiary of some legislative enactment granting standing. *Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 301 Minn. 28, 31–32, 221 N.W.2d 162, 165 (1974). An injury-in-fact is a concrete and particularized invasion of a legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Enright argues that Lehmann lacks standing to challenge the garnishment because the funds belong to Lehmann's wife.

This argument is without merit. According to the terms of the account contract, Lehmann possesses the power to withdraw and use the funds in the account regardless of the original source of the deposit. We conclude that, as an invasion of this interest, garnishment of the funds causes him an injury-in-fact and vests him with standing to challenge the garnishment.

■■■ Enright also argues that this case is moot because the bank paid the garnished funds to Enright's attorney, who—despite the fact that the funds were the subject of ongoing litigation—gave them to Enright rather than depositing them in his client trust account. An issue is moot if a court is unable to grant effectual relief. *In re Schmidt,* 443 N.W.2d 824, 826 (Minn.1989). Because we have the power to grant Lehmann relief by ordering Enright to repay any wrongfully garnished funds, this case is not moot.

## II.

Lehmann and amicus curiae Probate and Trust Law Section of the Minnesota State Bar Association argue that because the Multi–Party Accounts Act (MPAA) states that Lehmann does not own funds contributed by his wife to a joint account, those funds cannot be garnished to satisfy his debt. They also argue that by enacting the MPAA, the legislature abrogated *Park Enterprises* and any common law based on it. Enright responds that *Park*

*Enterprises* is still good law and that the garnishment statute, Minn.Stat. § 571.73 (2006), grants him power to garnish the funds.

Construction of a statute on appeal is a legal question subject to de novo review. *Lewis–Miller v. Ross,* 710 N.W.2d 565, 568 (Minn.2006). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2006).

### A. The Multi–Party Accounts Act

In 1973, the Minnesota legislature enacted the MPAA. Act of May 23, 1973, ch. 619, 1973 Minn. Laws 1472, 1472 (codified at Minn.Stat. § 528.01 (1974)). In 1994, the legislature renumbered the MPAA to make it part of the Probate Code, but did not alter its text. Act of Apr. 20, 1994, ch. 472, § 63, 1994 Minn. Laws 375, 415 (renumbering Minn.Stat. §§ 528.01–528.15 as Minn.Stat. §§ 524.6–201 to 524.6–214 (2006)).

Section 4 of the MPAA, titled "Ownership During Lifetime," provides that "[a] joint account [1] belongs, during the lifetime of all parties, to the parties in proportion to the net contributions [2] by each to the sums on deposit,[3] unless there is clear and convincing evidence of a different intent." Minn.Stat. § 524.6–203(a). The

---

1. " 'Joint Account' means an account so designated, and any account payable on request to one or more of two or more parties and to the survivor of them." Minn.Stat. § 524.6–201, subd. 4 (2006).

2. " 'Net Contribution' of a party to a joint account as of any given time is the sum of all deposits thereto made by or for the party, less all withdrawals made by or for the party which have not been paid to or applied to the use of any other party * * *." Minn.Stat. § 524.6–201, subd. 6 (2006). We interpret

deposits "made by or for the party" to include deposits the party made personally or deposits made on the party's behalf by a third party, such as a paycheck deposited directly by an employer.

3. " 'Sums on deposit' means the balance payable on a multiple-party account including interest, dividends and, in addition, any deposit life insurance proceeds added to the account by reason of the death of a party." Minn.Stat. § 524.6–201, subd. 13 (2006).

preceding section provides that "[t]he provisions of sections 524.6–203 to 524.6–205 concerning beneficial ownership as between parties * * * are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts." Minn.Stat. § 524.6–202 (2006).

■ The language of the MPAA is unambiguous. In a controversy between parties to a multi-party account and their creditors, funds in a joint account belong to the parties in proportion to their net contributions. A party's net contribution is the amount of money deposited by or for him, less withdrawals made by or for him. Therefore, we hold that where one party has contributed all the money in a joint account, a creditor cannot garnish the account to satisfy a debt belonging to a non-contributing party unless the creditor provides clear and convincing evidence that the depositor intended to confer ownership of the funds on the debtor.

Enright asserts that in enacting the MPAA the legislature must not have intended to abrogate *Park Enterprises* (which allowed garnishment of part or all of the funds in a joint account to satisfy to debt of one of the depositors) because there is no mention in the statute of creditor rights except the statement that sections 6–203 to 6–205 are "relevant only to controversies between these persons and their creditors and other successors." Minn.Stat. § 524.6–202. Enright contends that this language is "opaque" because it is not clear how, exactly, the sections are "relevant." On the contrary, we find the MPAA quite clear: section 6–203 applies where a creditor attempts to reach funds in a joint account, while section 6–202 allows the account contract to define the parties' power of withdrawal.

Although our holding does not require us to look beyond the plain language of Minn.Stat. §§ 524.6–202 to –203, a brief review of the policy behind the enactment of the MPAA is illuminating. At common law, jurisdictions applied four different theories to determine ownership of funds in joint accounts: contract theory, gift theory, trust theory, and joint tenancy theory. Note, *The "Poor Man's Will" Gains Respectability: Using the Minnesota Multi-Party Accounts Act,* 1 Wm. Mitchell L.Rev. 48, 50 (1974). Although Minnesota generally applied gift theory, in which the intent of the depositor to make or not make an inter vivos gift determined ownership of funds in a joint account, "the vagaries inherent in the application of that theory made the label of limited value in predicting the outcome of actual cases." *Id.* Moreover, "it was not even altogether certain that Minnesota followed the gift theory in determining the ownership of the funds during the lives of all of the parties. The case law on the issue is scant and conflicting." *Id.* Despite the apparent general application of gift theory, *Park Enterprises* applied contract theory, in which the terms of the account agreement determine ownership of the funds, to hold that the entire amount on deposit in a joint account was subject to garnishment because the account agreement in that case made all funds deposited in the account "the property of the depositors jointly with the right of survivorship." 233 Minn. at 468, 47 N.W.2d at 195. But we rejected contract theory in *Erickson v. Kalman,* 291 Minn. 41, 45, 189 N.W.2d 381, 384 (1971): "[I]f the trial court was treating the case as one of contract, it was error for it to do so because this court considers deposits [in a joint and several savings account] to be in the nature of gifts and to be governed by the rules applicable to gifts."

Perhaps in response to this uncertainty in the law of joint accounts,[4] the legislature intervened by enacting the MPAA, which establishes a clear standard for determining ownership of funds and provides some measure of protection for assets in a joint bank account from creditors of either party. A joint account with a right of survivorship provides a "simple, inexpensive method of passing funds in the account from a deceased joint owner to the surviving joint owner, avoiding the necessity of probate proceedings." *Deutsch, Larrimore & Farnish, P.C. v. Johnson,* 577 Pa. 637, 848 A.2d 137, 142–43 (2004). A joint account is thus sometimes referred to as a "poor man's will." *See id.* at 142; Note, *supra,* at 48. This benefit of a joint account is lost, however, if the creditors of either party to the account can reach any of the funds therein:

> If the creator of the joint account, whose intent is usually testamentary in nature, could be impoverished by the acts of the joint tenant over which the creator has no control, such as attempts of the other joint tenant or her creditors to reach the funds, there is great risk to the creator of the joint account. It may be these evils that [the Multi–Party Accounts Act] was intended to limit, lending stability and security to the creation of joint bank accounts.

*Deutsch,* 848 A.2d at 143; *accord Browning & Herdrich Oil Co. v. Hall,* 489 N.E.2d 988, 991–92 (Ind.Ct.App.1986); *In re Estate of Maxfield,* 856 P.2d 1056, 1059 (Utah 1993).

The Pennsylvania Supreme Court in *Deutsch* quoted from the official comments to Pennsylvania's version of the MPAA: " '[A] person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he [or she] usually intends no present change of beneficial ownership.' " 848 A.2d at 143 (quoting Official Comment to 20 Pa. Cons.Stat. § 6303). The court concluded that the joint account owner "had no ownership interest" in the funds deposited by the other owner; "at most she had a mere expectation of a right of survivorship." *Id.*

### B. Other jurisdictions

One of the purposes of the Uniform Probate Code is to "make uniform the law among the various jurisdictions." Minn. Stat. § 524.1–102(b)(4) (2006). "Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." Minn. Stat. § 645.22 (2006). While Minnesota's MPAA was not initially enacted as part of the probate code, the legislature's decision to move it to the probate code indicates the legislature's desire that Minnesota courts interpret the MPAA consistently with those of other states. And while we base our holding on the plain language of the MPAA, it is instructive that other jurisdictions have apparently uniformly concluded that the MPAA applies to garnishment of joint accounts and that funds in a joint account belong to the parties in pro-

---

**4.** This uncertainty was not confined to Minnesota. The Illinois Supreme Court noted that "[t]he familiar joint bank account has had an uneasy career in the courts because the relationships which it contemplates do not fit readily into common-law categories." *In re Estate of Schneider,* 6 Ill.2d 180, 127 N.E.2d 445, 447 (1955). "Common-law doctrines governing gifts of personal property have contributed their share to the complex of legal problems * * * for the common law required a complete relinquishment of ownership by the donor in order to achieve an effective gift, while the joint bank account contemplates power of withdrawal by both parties." *Id.*

portion to their contributions.[5] Enright points out that Connecticut has allowed execution against the entire balance of a joint account to satisfy the debt of one account holder. But Connecticut has not enacted the MPAA. *See Fleet Bank Conn., N.A. v. Carillo*, 240 Conn. 343, 691 A.2d 1068, 1071 (1997). Enright does not cite, and we have not found, any case from a jurisdiction that had adopted the MPAA that allows garnishment of funds in a joint account to satisfy the debt of a non-contributing account holder.

### C. The court of appeals decision

The court of appeals held that the MPAA did not apply and instead followed the rule of our 1951 decision in *Park Enterprises*. In that case, we affirmed garnishment of a joint account without regard to how much the debtor had actually contributed to the account. *Park Enters.*, 233 Minn. at 470, 47 N.W.2d at 196. Because a joint account was "difficult, if not impossible, to classify under traditional catego-ries of legal ownership," we decided to "treat this case as presenting a contract question and * * * decide what the incidents of this type of ownership are primarily by reference to the terms of the contract creating it." *Id.* at 469–70, 47 N.W.2d at 195–96. We reasoned that the account agreement in question allowed each depositor unconditional power to withdraw all or any part of the account and that because the wife allowed the husband to treat the funds in the joint account as his individual property, she was "in no position to assert that creditors, subrogated to his rights, may not treat them as if they were his individual property." *Id.* at 471, 47 N.W.2d at 196–97. "Since in purpose and legal effect a garnishment proceeding is virtually an action brought by defendant in plaintiff's name against the garnishee," we concluded that "[d]efendant is entitled to withdraw any part or all of the account, and plaintiff, in effect, is subrogated to that right." *Id.* at 470, 47 N.W.2d at 196. Applying *Park Enterpris-*

---

5. *See, e.g., Lamb v. Thalimer Enters., Inc.*, 193 Ga.App. 70, 386 S.E.2d 912, 914 (1989) (applying Georgia's MPAA and holding that, in the absence of evidence of a different intent, proceeds from the sale of a couple's home deposited in a joint account should be divided in half); *Browning & Herdrich*, 489 N.E.2d at 990 (holding that under the MPAA, a debtor had insufficient interest in funds deposited by his mother in their joint account to make them subject to garnishment for a judgment against him alone); *Brown v. Commonwealth*, 40 S.W.3d 873, 880–82 (Ky.Ct.App.1999) (distinguishing *Park Enterprises* and remanding for findings on the ownership of the funds in a joint account); *Szelenyi v. Miller*, 564 A.2d 768, 771 (Me.1989) (holding that under the Uniform Probate Code, funds deposited into a joint account entirely by a physician sued for malpractice were available to satisfy a judgment against him where no clear and convincing evidence showed that he intended the funds to be a gift to his wife); *Craig v. Hastings State Bank*, 221 Neb. 746, 380 N.W.2d 618, 623 (1986) ("[I]f it is established that a nondebtor party to the account has funded all or part of the beneficial interest in an account, a bank has no right of setoff against the beneficial interest contributed by the non-debtor depositor."); *Deutsch*, 848 A.2d at 144 (holding that a non-contributing owner had no ownership interest in a joint account and thus the account assets were not subject to execution to satisfy her debt); *RepublicBank Dallas v. Nat'l Bank of Daingerfield*, 705 S.W.2d 310, 312 (Tex.App.1986) (holding that a debtor held only "bare legal title" to the funds in a joint account and that the "equitable interest" in the funds was in the other account holders, so the funds were not subject to garnishment); *Vaughn v. Bernhardt*, 345 S.C. 196, 547 S.E.2d 869, 870 (2001) (holding that a widower who withdrew funds deposited into a joint account by his wife before her death was not entitled to keep the funds because they belonged to the wife during her lifetime); *Estate of Maxfield*, 856 P.2d at 1058–59 (reviewing case law and holding that a judgment creditor can reach only those funds in a joint account that the judgment debtor contributed unless the other joint tenant intended to make a gift to the debtor).

*es* in this case, the court of appeals held that Enright was entitled to garnish the accounts because Enright became subrogated to Lehmann's unlimited right to withdraw funds from them. *See Enright*, 724 N.W.2d at 549.

The court of appeals declined to apply Minn.Stat. § 524.6–203 because it is part of the Probate Code, which according to the court "does not purport to govern relationships or rights of anyone other than decedents, missing or incapacitated persons, or minors." 724 N.W.2d at 549. The problem with this interpretation is that Minn.Stat. §§ 524.6–202 to –203, by their terms, govern the relationships of living joint account holders and their creditors. Furthermore, Minn.Stat. § 524.1–301 (2006), which defines the "territorial application" of chapters 524 and 525, states that *"[e]xcept as otherwise provided in this chapter,* this chapter and chapter 525 apply to (1) the affairs and estates of decedents, missing persons, and persons to be protected * * *." (Emphasis added.) The Probate Code explicitly leaves open the possibility that certain sections in chapters 524 and 525 apply to persons other than decedents, missing or incapacitated persons, and minors.

■■■ The court of appeals also reasoned that article 6 of the Probate Code, of which Minn.Stat. § 524.6–203 is a part, is entitled "Nonprobate Transfers on Death" and therefore applies only to "issues arising after the death of a joint depositor of an applicable bank account." 724 N.W.2d at 549 (citing Minn.Stat. §§ 524.6–201 to –214 (2004)). But "[t]he headnotes printed in boldface type before sections and subdivisions in editions of Minnesota Statutes are mere catchwords to indicate the contents of the section or subdivision and are not part of the statute." Minn.Stat. § 645.49 (2006). Although it is true that "headings are relevant to legislative intent where they were present in the bill during the legislative process," *Minn. Express, Inc. v. Travelers Ins. Co.*, 333 N.W.2d 871, 873 (Minn.1983), when the legislature first enacted the MPAA, the heading "Nonprobate Transfers on Death" was not part of the bill. *See* Act of May 23, 1973, ch. 619, 1973 Minn. Laws 1472, 1472. The legislature did not make the MPAA part of the Probate Code until 1994 and even then did nothing to limit its applicability to accounts held at death. *See* Act of Apr. 18, 1994, ch. 472, § 63, 1994 Minn. Laws 375, 415. The title of article 6 does not negate section 6–203's statement that it applies "during the lifetime of all parties" to the account. The court of appeals erred in not applying the plain language of the MPAA.

■■■ Enright concedes that the MPAA applies during the lifetime of parties to a joint account. In addition to his argument that the MPAA is hopelessly vague, which we address above, he argues that *Park Enterprises* is still the law and seems to suggest that if the legislature wished the MPAA to abrogate *Park Enterprises,* it was required to mention the case by name. Enright is incorrect, because the legislature may abrogate common law doctrines "by express wording or necessary implication." *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 377–78 (Minn.1990). As the rule articulated in *Park Enterprises* is incompatible with Minn.Stat. § 524.6–203, we hold that *Park Enterprises* has been abrogated.

### III.

■■■ Although Minn.Stat. § 524.6–203 provides that funds in a joint account belong to the parties in proportion to their net contributions, Minn.Stat. § 524.6–202 provides that the account contract defines the parties' power to withdraw funds. Enright argues that Lehmann had the right under the account contract to withdraw all

of the money in the joint accounts and that Enright became subrogated to that right. In common law subrogation, a subrogee stands in the shoes of a subrogor and obtains the rights of the subrogor. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.,* 580 N.W.2d 490, 493 (Minn.1998) (citing *Medica, Inc. v. Atl. Mut. Ins. Co.,* 566 N.W.2d 74, 76 (Minn.1997)). The subrogee, however, cannot obtain greater rights in property than the subrogor possesses. *Id.* (citing *Rowe v. St. Paul Ramsey Med. Ctr.,* 472 N.W.2d 640, 644 (Minn.1991)). Under the MPAA, a joint account holder does not, without evidence of a contrary intent, own funds contributed by another party to the account. Even where a joint account holder has the power to withdraw funds he did not contribute, he exercises dominion over those funds only with the consent of the contributing party, who can bring an action to recover wrongfully withdrawn funds. *See, e.g., Brennan v. Carroll,* 260 Minn. 521, 525, 533, 111 N.W.2d 229, 233, 237 (1961) (affirming the trial court's decision to allow a decedent's estate to recover funds contributed to a joint account by the decedent and withdrawn by decedent's sister because the decedent did not intend to make a gift to his sister). Because the account holder does not have an absolute right to funds he did not contribute, a creditor cannot acquire such a right through subrogation.[6]

■ Enright also argues that he has a right to garnish all funds in the joint account under Minn.Stat. § 571.73, subd. 3(2). That section provides that all "money, or other property due or belonging to the debtor and owing by the garnishee or in the possession or under the control of the garnishee" is attachable by garnishment. As we have explained, funds deposited by Lehmann's wife do not "belong" to Lehmann. The statute does not define, and we have not defined, what money is "due" a debtor within the meaning of section 571.73, subd. 3(2). If we were to construe all funds in a joint account as "due" to any party to the account and therefore attachable by garnishment to satisfy a debt, section 571.73 would negate section 524.6–203. We note that section 571.73 is a general procedural statute describing the process by which creditors in Minnesota may satisfy judgments, while section 524.6–203 is a specific substantive statute defining the ownership of funds in a joint bank account. "When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both." Minn.Stat. § 645.26, subd. 1 (2006); *see Reider v. Anoka–Hennepin Sch. Dist. No. 11,* 728 N.W.2d 246, 252 (Minn.2007) (equating "special provision" in Minn.Stat. § 645.26 with "specific provision"). In order to avoid a conflict between the garnishment statute and the MPAA, we hold that a joint account holder's power of withdrawal does not, by itself, mean that funds he did not contribute are "due" him within the meaning of section 571.73, subd. 3(2). Therefore, funds in a joint account are not, simply by virtue of the power of withdrawal provided in the account contract, attach-

---

6. We note, as a side matter, that subrogation stems from the equitable powers of the court, which must give due regard to the legal and equitable rights of others. *United Carolina Bank v. Beesley,* 663 A.2d 574, 576 (Me.1995). Subrogation will not be enforced to the prejudice of other rights of equal rank or to the injury of innocent third persons. *Compania Anonima Venezolana De Navegacion v. A.J. Perez Exp. Co.,* 303 F.2d 692, 697 (5th Cir. 1962). Enright's argument for subrogation on the equities of this case is not particularly strong because Lehmann's wife, who is not indebted to Enright, contributed all the funds in the joint accounts.

able by garnishment to satisfy the debt of a party who did not contribute the funds.

Under the plain language of Minn.Stat. § 524.6–203, funds in a joint account may not be garnished to satisfy a judgment against a party who did not contribute the funds, unless the creditor provides clear and convincing evidence that the depositor intended the funds to belong to the debtor. It is undisputed that Lehmann did not contribute any of the funds in the two joint accounts sought to be garnished, and Enright has offered no evidence that Lehmann's wife, who did deposit the funds, intended to confer ownership on Lehmann. Enright, therefore, may not garnish those funds to satisfy his judgment against Lehmann.

Reversed and remanded for entry of an order that the garnished funds be redeposited.